1  Wendy Medura Krincek, Bar No. 6417
   wkrincek@littler.com
2  Kelsey E. Stegall, Bar No. 14279
   kstegall@littler.com
3  LITTLER MENDELSON P.C.
   3960 Howard Hughes Parkway
4  Suite 300
   Las Vegas, Nevada  89169.5937
5  Telephone:    702.862.8800
   Fax No.:      702.862.8811
6
   Attorneys for Defendant
7  WYNN LAS VEGAS, LLC

8

9                        UNITED STATES DISTRICT COURT

10                          DISTRICT OF NEVADA

11

12  TIARE RAMIREZ, an individual,              Case No. 2:19-cv-01174-APG-BNW

            Plaintiff,                         **DEFENDANT'S MOTION FOR**
13                                             **SUMMARY JUDGMENT**

14       v.

    WYNN LAS VEGAS, LLC; DOES I through X;
15  and ROE Corporations XI through XX,
    inclusive,
16
            Defendant.
17

18          Defendant WYNN LAS VEGAS, LLC ("Defendant," "WLV," "Wynn," or "the Company"),

19  by and through its respective counsel of record, hereby moves for summary judgment in its favor

20  pursuant to Federal Rule of Civil Procedure 56. There is no genuine dispute as to any material fact,

21  and therefore, Defendant is entitled to summary judgment as a matter of law on each and every one of

22  Plaintiff's claims. After 24 leaves provided by WLV, including an FMLA intermittent leave for

23  Plaintiff's ankle, Plaintiff chose to violate her doctor's orders and wear heels outside of work to a

24  social event and then call out of work on FMLA leave despite still attending these social events.  After

25  an investigation into Plaintiff's FMLA misuse, Defendant terminated her for willful misconduct and

26  dishonesty due to misusing her FMLA.  Despite the validity of this, Plaintiff brought the instant suit.

27  As such, Plaintiff's claims fail as a matter of law, and summary judgment should be granted for

28  Defendant as to all of Plaintiff's claims.  This Motion is made and based upon the accompanying

4868-4301-4402.1 / 067538-1036

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

1  Memorandum of Points and Authorities, the supporting declarations and exhibits[1] attached thereto,

2  and all pleadings and papers on file herein.

3  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

4  **I.    INTRODUCTION**

5      Over the course of 8 years, Plaintiff was provided 24 leaves of absences under the Family and

6  Medical Leave Act ("FMLA"), Defendant's Collective Bargaining Agreement ("CBA"), and the

7  Americans with Disabilities Act ("ADA") without issue.  Most relevant to Plaintiff's allegations,

8  Plaintiff was provided intermittent FMLA leave for an ankle condition, which medically required her

9  not to wear high heels and to stay home if she had a flare-up.  Despite this, in March of 2017, Plaintiff

10  attended a WLV co-worker's gender reveal party at a bar, Blue Martini in Town Square, three hours

11  before she was supposed to work and wore brand new high heels to the event.  Not wanting to go to

12  work, Plaintiff called out of work pursuant to her intermittent FMLA leave and then returned to the

13  after-party at GameWorks at Town Square. However, somebody posted a picture on Facebook of

14  Plaintiff at this party and in her high heels—contrary to her doctor's orders and the medical

15  certification Plaintiff had provided Defendant to obtain FMLA leave.  This picture was provided to

16  Defendant's human resources, which promptly commenced an investigation.

17      Plaintiff attempted to bury this incident by taking an additional six months of leave unrelated

18  to the ankle condition immediately after this event. As soon as Plaintiff returned to work, the Company

19  was able to conclude its investigation and made a good faith determination that Plaintiff had misused

20  her FMLA leave. Because of this, Plaintiff was terminated from her employment.

21      In spite of Plaintiff's termination being due to her own poor choices, Plaintiff has now brought

22  suit against Defendant where she alleges that she was discriminated and retaliated against for taking

23  FMLA leave and because of her purported disability.  Specifically, Plaintiff's Complaint asserts four

24  causes of action for: (1) violation of the FMLA (2) violation of the ADA (3) retaliation in violation of

25  42 U.S.C. §2000e and NRS 613.340; and (4) negligent hiring, training, and supervision. However, as

26  explained more thoroughly *infra*, Defendant approved multiple leaves of absence and fully

27  accommodated Plaintiff during her employment with the Company, precluding any validity to

28  _____
[1] The declaration of Wendy Krincek, attached hereto as **Exhibit 1**, identifies deposition testimony and/or declarations that authenticate Defendant's exhibits attached in support of this Motion.

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

2                                                    2:19-CV-01174-APG-BNW

Plaintiff's allegations. Because no genuine issue of material fact exists to prevent summary judgment, Defendant moves for summary judgment on each and every one of Plaintiff's meritless claims.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    Plaintiff's Employment with Defendant

Defendant hired Plaintiff as a cocktail server – model on November 20, 2008. **Exhibit 2, Plaintiff's Depo. Tr. at 37:19–25**. The cocktail server is responsible for providing quality guest service through the serving of beverages, food, and amenities in all areas of the resort, including restaurants, nightclubs, banquets, and the casino. **Exhibit 3, Cocktail Server – Model Job Summary.** Notably, the cocktail server position requires the employee to be able to stand for long periods of time and walk in high-heeled shoes ranging from 2–3 inches in height, which Plaintiff testified that she understood. **Exhibit 4, Cocktail Servers Conditions of Employment; Ex. 2 at 41:2–9.**

### a.    Defendant's Attendance Policies and Plaintiff's Terminable Attendance Infractions

As part of its standard operating policies and procedures, Defendant maintains a point-based attendance policy. **Exhibit 5, WLV Attendance Standards.** The attendance policy provides that if an employee has attendance infractions, then the employee will incur various levels of attendance points. *Id.* For example, an absence results in the incurrence of one attendance point if it is not during a peak business period, and a tardy results in a half point.  Approved leave, such as leave under the FMLA or other medical leave, *does not accrue attendance points*. **Ex. 5; Exhibit 6, WLV Family and Medical Leave Policy.** The Family and Medical Leave Policy provides that eligible employees may take FMLA leave for the employee's own serious health condition that renders the employee incapable of performing the functions of her job. **Ex. 6.**  Plaintiff was informed of Defendant's attendance policy and Family and Medical Leave Policy at the time of her hire, and she acknowledged her understanding of the same. **Exhibit 7, Plaintiff's Acknowledgement of WLV's Policies**. Plaintiff further understood that time off for approved leaves of absences, including intermittent leaves, did not count as points under WLV's Attendance Policies. **Ex. 2 at 61:2–7.**

During the last year of her employment with Defendant, Plaintiff incurred several attendance infractions. By December 10, 2016, Plaintiff had accumulated five attendance points and was issued

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

3

2:19-CV-01174-APG-BNW

a First Written Warning for attendance. **Exhibit 8, Plaintiff's First Written Warning.** Less than two months later, by January 27, 2017, Plaintiff had accumulated eight attendance points and was issued a Second Written Warning for attendance. **Exhibit 9, Plaintiff's Second Written Warning.** As stated in Defendant's Attendance Standards policy, eight attendance points in a rolling calendar year should result in suspension pending investigation and subsequent termination of employment. ***See* Ex. 5.** However, Plaintiff was issued a last and final warning in lieu of suspension and was advised any further attendance infractions would lead to suspension pending investigation and ultimately termination of employment. As noted previously, any approved leave, such as that under the FMLA, does not result in the accumulation of attendance points.  Consequently, as of the date of Plaintiff's attendance at the gender reveal party, Plaintiff was on notice that an additional non-protected absence would lead to suspension and termination.

### b. Defendant's Leave Policies and Plaintiff's 24 Medical Leaves Throughout Her Employment

For cocktail servers, Defendant provides numerous avenues of medical leave. Specifically, if an employee has worked for Defendant for one year and worked a minimum of 1250 hours in the past 12 months, the employee is allowed leave under the Family Medical Leave Act ("FMLA") as allowed by the statute. **Exhibit 10, Karen Sanchez Depo. Tr. at 6:13–16**.  Moreover, if that leave is exhausted or is not available to the employee, the employee can then take leave pursuant to Section 13.01 of Defendant's Collective Bargaining Agreement ("CBA"), which Defendant refers to as 13.01 leave. ***See id.* at 18:3–5; *see also* Exhibit 11, Excerpts from the Collective Bargaining Agreement between WLV and the Culinary Workers Union.**  Pursuant to Section 13.01(b), an employee is entitled to medical leave for a period of 6 months during a 12-month period. **Ex. 11 at WYNN460.** Once both of these leaves are exhausted, the employee is then evaluated for an extension of leave or additional leave under the ADA. ***See* Exhibit 12, Melissa Espino-Cascos Depo. Tr. at 35:25–36:16.**

Throughout Plaintiff's employment, Plaintiff had been approved for 24 leaves of absence between 2009 and 2017. ***See* Exhibit 13, Plaintiff's PAN Action History.**  These leaves included FMLA, 13.01, and child-rearing leave, but this document does not include the days Plaintiff called out due to her intermittent leave. ***See id.*** Excluding Plaintiff's three child-rearing leaves, prior to March

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

4                                    2:19-CV-01174-APG-BNW

of 2017, Plaintiff had taken over 13 months of medical leave during her employment pursuant to Defendant's leave policies. ***See id.***

Plaintiff's leaves included intermittent leave under the FMLA, which was submitted to Defendant in June of 2016 by Plaintiff's doctor, Dr. Ted Cohen, and was approved by Defendant from June 3, 2016, through June 2, 2017. ***See* Exhibit 14, FMLA Medical Certification; Exhibit 15, WLV's Approval of Plaintiff's FMLA Intermittent Leave.**  This intermittent leave was requested due to "Painful ankles, B/L with chronic tendinitis." **Ex. 14 at WYNN000329; Ex. 2 at 70:1–3**. Plaintiff's medical certification provided, "Patient has a chronic ankle condition that requires rest & time off [for] flair [sic] ups. [Patient] needs to reduce heel height on shoes to improve condition. Chronic ankle condition – needs time off when she can't walk!" **Ex. 14 at WYNN000330.**  Plaintiff's certification goes on to specifically state, "When she's unable to walk – she's to stay home!" ***Id.*** Pursuant to Plaintiff's medical certification that her doctor provided to Defendant, and pursuant to Defendant approving Plaintiff's intermittent leave, Plaintiff was allowed to call out from work due to her medical condition for ankle flare-ups when she cannot walk.  And, when she cannot walk, she is to stay home.

### c.  Plaintiff's Misconduct and Termination

Eight months after having approved intermittent leave for Plaintiff's alleged ankle condition, on March 21, 2017, at approximately 4:19 p.m., following her attendance at the event at the Blue Martini bar while walking to her car and just prior to walking from her car to GameWorks, Plaintiff called out from work for her 5:30 p.m. to 1:30 a.m. shift, citing FMLA as the basis for her absence, which was conditionally approved under her active intermittent FMLA leave. ***See* Ex. 2 at 75:17–22, 88:3–89:6.**  Assistant Director of Cocktail Services, Tia Gibson, received a picture from Facebook that was dated March 21, 2017, and posted at 6:42 p.m. **Exhibit 16, Tia Gibson Depo. Tr. at 42:2– 23; Exhibit 17, Facebook Post of Photo.** The picture showed that Plaintiff, the third woman from the left in the front row, attended a gender reveal party for a co-worker on the same day she called out and cited FMLA for her absence. **Ex. 17.** In addition to her attendance at the party, the picture also showed Plaintiff wearing high heels in stark contrast to her physician's directives. ***Compare* Ex. 17 *with* Ex. 14**. With the amount of attendance points Plaintiff had already accrued, if Plaintiff would have called

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

5

2:19-CV-01174-APG-BNW

out rather than use her FMLA intermittent leave, Plaintiff would have been placed on suspension immediately and possibly terminated pursuant to WLV's Attendance Policy. ***See* Exhibit 18, Jeralynn Makaiwi Depo. Tr. Vol. II at 104:18–105:11.**

Upon receiving this picture, Ms. Gibson notified WLV's Employee Relations Department about it and of Plaintiff's potential abuse of her FMLA leave. **Ex. 16 at 64:8–14, 84:5–20.** Ms. Gibson noticed that also present in the picture was a member of management, WLV Beverage Manager, Ian Lacuesta. *Id.* **at 45:11–14.** Ms. Gibson, along with Senior Employee Relations Counselor Jeralynn Makaiwi, met with Mr. Lacuesta on March 22, 2017, commencing the investigation into Plaintiff's misuse. ***See* Exhibit 19, Jeralynn Makaiwi Depo. Tr. Vol. I at 215:23–216:2; Exhibit 20, Ian LaCuesta Depo. Tr. at 13:9–14.** Mr. Lacuesta confirmed that he attended a gender reveal party on March 21, 2017, and he also confirmed Plaintiff was in attendance until after 6:00 p.m.; Mr. LaCuesta included this information in the statement that he provided Employee Relations dated March 22, 2017. ***See* Exhibit 21, LaCuesta Statement.** Based on the Social Media posting and Mr. LaCuesta's eyewitness account, it was determined that Plaintiff would be placed on suspension pending investigation for alleged FMLA abuse prior to the start of her next shift, which was scheduled for March 24, 2017. ***See* Ex. 18 at 61:5–23**.

Defendant's representatives, however, were unable to meet with Plaintiff on March 24, 2017, due to her calling out from work. ***See id.*; Ex. 2 at 103:1–25.** Notably, when calling out for her shift on March 24, 2017, Plaintiff indicated her absence was due to a new FMLA qualifying event. **Ex. 2 at 103:23–104:3.** However, because Plaintiff had not worked 1250 hours within the last year, an eligibility requirement for leave under the FMLA, Plaintiff's leave was under consideration pursuant to Section 13.01 of her CBA. ***See* Ex. 10 at 6:13–16; Ex. 11.** On March 30, 2017, Defendant received a Medical Verification form completed by Plaintiff's physician stating she would need to remain out of work commencing on March 22, 2017, with an end date to be determined, due to internal derangement of her right knee, a condition unrelated to her original approved intermittent FMLA leave for a chronic ankle condition. **Exhibit 22 March 29, 2017 Medical Certification Form.** Subsequently, her medical leave was approved under the CBA Section 13.01, and the suspension pending investigation was postponed until Plaintiff could return to work. ***See* Ex. 18 at 61:5–23**.

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

6                                    2:19-CV-01174-APG-BNW

On April 28, 2017, Defendant's Employee Relations Department received an additional Medical Certification Form stating that Plaintiff's leave of absence needed to be extended until August 1, 2017, which was approved. **Exhibit 23, April 26, 2017 Medical Certification Form**. Subsequently, on July 24, 2017, Defendant's Employee Relations Department received yet another form stating that Plaintiff required an additional extension through September 1, 2017, which was also approved. **Exhibit 24, July 24, 2017 Medical Certification Form.** On September 1, 2017, Defendant's Employee Relations Department received additional paperwork whereby Plaintiff's physician once again indicated she would need an additional extension of leave through December 29, 2017. **Exhibit 25, Boston Mutual Life Insurance Company Form.**

Because employees are entitled to six months of Section 13.01 leave under the CBA, Plaintiff had exhausted all of her available leave under the CBA on September 15, 2017. **See Ex. 11.** Plaintiff's request to extend her leave was therefore initially approved through September 15, 2017, but because she had exhausted all available leave, Plaintiff was then put in contact with Defendant's former ADA Administrator, Melissa Espino-Cascos, to determine whether or not an extension of leave beyond September 15, 2017, could be approved as a reasonable accommodation under the ADA. **See Exhibit 26, Notes by Melissa Espino-Cascos, WLV ADA Administrator.** Importantly, this was the first time that Plaintiff had requested leave as an accommodation under the ADA. On September 13, 2017, Ms. Espino-Cascos received documentation stating that Plaintiff would require an extension of leave through December 30, 2017. **Exhibit 27, September 8, 2017 Medical Certification Form.** On September 22, 2017, Plaintiff's request for an extension of leave was approved as leave under the ADA. **Ex. 26.** On October 13, 2017, Ms. Espino-Cascos received a Return to Duty/Medical Release stating Plaintiff could return to work without any restrictions effective October 14, 2017. **Exhibit 28, October 13, 2017 Return to Duty/Medical Release.**

Plaintiff's return to work—after 7 months of multiple leaves of absences—finally allowed Defendant to continue to investigate her FMLA leave request and potential misuse on March 21, 2017. **See Ex. 18 at 61:5–23**. Upon her return to work on October 14, 2017, Plaintiff was placed on Suspension Pending Investigation. **See Ex. 13; Exhibit 29, October 14, 2017 Counseling Notice; Ex. 2 at 114:1–115:2.** On October 16, 2017, Ms. Makaiwi met with Plaintiff to discuss her FMLA

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

7

2:19-CV-01174-APG-BNW

call out on March 21, 2017. **Ex. 2 at 116:9–12.** At that meeting, Plaintiff stated that on March 21, 2017, she had gone to a gender reveal party early in the afternoon, prior to her shift, and admittedly wore brand new heels to the party. *Id.* **at 116:13–19;** *see also* **Exhibit 30, Plaintiff's Statement.** She stated that while she was at the party, her feet began to swell up, and they were so painful that she called off under the FMLA. **Ex. 30.** Plaintiff stated she left the party at 4:00 p.m., which she said was prior to the start of her shift, failing to disclose that she actually remained at Town Square afterwards. **Ex. 2 at 116:17–19; Ex. 30.**

Despite the actual gender reveal party ending at around 4:00 p.m., Plaintiff and other attendees continued on to GameWorks in Town Square afterwards. **Ex. 2 at 131:16–20.** Plaintiff arrived separately and Plaintiff's husband arrived with at least one other attendee of the gender reveal event. *Id.* **at 91:22–92:11.** Mr. LaCuesta was also in attendance at GameWorks, which he testified was a continuation of the gender reveal party because some of the guests at the gender reveal party "moved venues after the party officially ended at 4:00" p.m. **Ex. 20 at 84:12–21.** According to Mr. LaCuesta, while there, Plaintiff and her husband were standing in line to buy game cards to play the games, but they ended up not purchasing any game cards due to Plaintiff's husband getting into an altercation with other guests. *Id.* **at 93:3–22.** Mr. LaCuesta testified that everyone, including Plaintiff, eventually left GameWorks between 6:00 and 6:30 p.m. *Id.* **at 94:20–95:13.** Plaintiff contends she left Town Square closer to 5:00 p.m. **Ex. 2 at 95:23–25.**

Despite the fact that Plaintiff continued to engage in social events after calling out due to FMLA and in spite of her physician's directive, Plaintiff omitted the GameWorks information during WLV's investigation. Specifically, Plaintiff's statement that she provided Defendant only stated, "I had been at the baby shower for approximately an hour and a half, and departed from the event before my shift was scheduled." **Ex. 30.** Moreover, Plaintiff did not explain to Ms. Makaiwi during her interview that she had left the Blue Martini and went on to GameWorks after, as she only told Ms. Makaiwi that she left the party at 4:00 p.m. **Ex. 2 at 116:17–19, 134:11–15.** When asked during her deposition why she purposely omitted that information, Plaintiff's only response was that Ms. Makaiwi "did not ask me that question." *Id.* When asked whether Plaintiff thought it was in her best interest to hide the fact that she went to GameWorks after the gender reveal party from Ms. Makaiwi,

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

8

2:19-CV-01174-APG-BNW

Plaintiff again responded by stating that Ms. Makaiwi "didn't ask." *Id.* **at 135:25–136:6.**

Despite Plaintiff's blatant omissions to Ms. Makaiwi, Plaintiff advised Ms. Makaiwi that her doctor would be willing to write a note to state that she is able to wear high heels as long as she is comfortable in them. ***Id.*** **at 116:20–117:2.** Consistent with Plaintiff's representation that she would attempt to get a note from her doctor that she is able to wear high heels, contained in the medical records of Dr. Ted Cohen, the physician who certified Plaintiff for FMLA leave, are handwritten notes from Plaintiff to Dr. Cohen specifically stating that it should be "ok to wear heels for short periods of time, given there is access to sit," and contrary to his prior medical certification, that she should "not [be] confined to home as long as there is access to seating, and not doing activities such as dancing, running, or extended periods of time standing." **Exhibit 31, Plaintiff's Notes to Dr. Cohen.** On October 19, 2017, Ms. Makaiwi received an email from Dr. Cohen. **Exhibit 32, Email from Dr. Cohen to Jeralynn Makaiwi.** Similar to Plaintiff's handwritten notes, Dr. Cohen's email requested a work accommodation for Plaintiff stating that "she must be able to sit for short periods when she is at work and/or an extended shift," and almost mirroring Plaintiff's notes, Dr. Cohen stated, "She is restricted from strenuous activities i.e. Dancing, running, or extended standing." ***Id.*** Notably, however, despite Plaintiff's handwritten notes, Dr. Cohen's email *did not* state anything about her being able to wear high heels as long as she is comfortable in them. ***See id.*** In fact, Dr. Cohen's email stated exactly the opposite in providing that Plaintiff "has been given permission to wear a low heel shoe only." ***Id.***

On October 27, 2017, after concluding the investigation and after not receiving any additional information from Plaintiff, Defendant determined to go forward with the termination of Plaintiff due to willful misconduct, dishonesty, and misuse of FMLA/ADA. **Exhibit 33, Email Correspondence Related to Plaintiff's Termination.** Pursuant to this, Ms. Gibson called Plaintiff on November 1, 2017, and left a message to schedule a resolution meeting for November 2, 2017. ***Id.*** On that same day, Plaintiff provided additional information to Defendant. **Exhibit 34, Email from Plaintiff dated November 1, 2017.** Plaintiff sent another email the day of her resolution meeting. **Exhibit 35, Email from Plaintiff dated November 2, 2017.** Notably, none of the information provided by Plaintiff changed her narrative, as she only offered additional information to prove that she had left the gender

LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

9

2:19-CV-01174-APG-BNW

reveal party before her scheduled shift, but still had not made any mention of her going to GameWorks afterwards.  Nevertheless, the decision to terminate Plaintiff had already been made, and Plaintiff's eleventh-hour hail-mary of emails would not have changed this decision.  *See* **Ex. 33**.  Pursuant to this, Defendant terminated Plaintiff on November 2, 2017, for willful misconduct, dishonesty, and misuse of FMLA/ADA. **Exhibit 36, Plaintiff's Termination PAN.**

Despite the fact that Plaintiff's termination was no one's fault but her own, Plaintiff filed the underlying Complaint on June 11, 2019, alleging claims for: (1) Violation of the Family and Medical Leave Act ("FMLA"); (2) Violation of the Americans with Disabilities Act ("ADA"); (3) Retaliation in Violation of 42 U.S.C. §2000e and NRS 613.340; and (4) Negligent Hiring, Training, and Supervision. (*See* Compl., ECF No. 1).  Pursuant to the undisputed facts and that Plaintiff's claims are legally meritless, the Court should grant summary judgment in Defendant's favor on each and every one of Plaintiff's claims.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, and discovery show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## IV.    ARGUMENT

**A.    The Court Should Grant Summary Judgment for Defendant on Plaintiff's First Cause of Action for Violation of the FMLA Because Plaintiff was Not Terminated for Taking FMLA Leave or for Using FMLA leave, But She was Terminated for Dishonesty in Representing that She was Taking FMLA Leave When She was Improperly Wearing Heels and Attending a Social Event.**

The Family and Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. 2601(b), *et seq.*, allows eligible employees to take up to twelve work weeks of unpaid leave annually for qualified reasons,

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

10                                    2:19-CV-01174-APG-BNW

1    including the onset of serious health conditions. *See Nevada Dep't of Human Res. v. Hibbs*, 538 U.S.

2    721, 724 (2003) (quoting 107 Stat. 9, 29 U.S.C. § 2612(a)(1)(C)). The FMLA prohibits employers

3    from interfering with "the exercise of or the attempt to exercise the substantive rights guaranteed by

4    FMLA." *Bachelder Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) (quoting 29 U.S.C §

5    2615(a)(1)). The FMLA provides for two separate causes of action under its provisions: 1) interference

6    claims, in which employers deny, restrain, or interfere with an employee seeking statutory rights under

7    FMLA. 29 U.S.C. § 2615(a)(1); and 2) retaliation claims in which employers discriminate against or

8    discharge an employee because the employee has exercised their rights under the FMLA. 29 U.S.C.

9    § 2615(a)(2). Because Plaintiff includes a reference to both interference and retaliation under the

10   FMLA, for the sake of clarity, Defendant will address both.

11        **1.    WLV Did Not Interfere with Any of Plaintiff's Leaves, and Because of**
12             **This, Plaintiff's FMLA Interference Claim Fails as A Matter of Law.**

13        To establish an interference claim under the FMLA, a plaintiff must demonstrate

14   that:1) plaintiff exercised her rights under FMLA; 2) defendant interfered with, restrained, or denied

15   plaintiff the ability to exercise a right provided under FMLA; and 3) defendant used the taking of

16   FMLA as a negative factor in the decision to terminate plaintiff. *See* 29 C.F.R. § 825.220(c); *Xin Lui*

17   *v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d

18   1112, 1122 (9th Cir. 2001). In the Ninth Circuit, "[C]omplaints alleging adverse employment actions

19   taken against employees because they have used FMLA leave" are construed as "claims of

20   interference" rather than "claims of retaliation or discrimination." *Bachelder v. Am. W. Airlines, Inc.*,

21   259 F.3d 1112, 1124 (9th Cir. 2001); *Jones v. Nevada*, No. 2:14-CV-01930-APG-NJK, 2016 WL

22   4707987, at *3 (D. Nev. Sept. 7, 2016). To succeed on an interference claim, the plaintiff must prove

23   by a preponderance of the evidence that the FMLA leave was *impermissibly* considered in the decision

24   to terminate her. *See Bachelder*, 259 F.3d at 1124–26.

25        FMLA leave may be taken "intermittently or on a reduced leave schedule" under certain

26   circumstances. 29 C.F.R. § 825.202(a). Intermittent leave is FMLA leave taken in distinctive

27   allotments of time due to a single qualifying reason. 29 C.F.R. §§ 825.202(a), 825.203; *Sadeh v.*

28   *Venetian Casino Resort, LLC*, No. 2:10-CV-02224-KJD, 2012 WL 3065442, at *2 (D. Nev. July 27,

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

11                                                                              2:19-CV-01174-APG-BNW

2012). Intermittent leave must be "medically necessary," as determined by a "serious health condition" of the employee. 29 C.F.R. § 825.203.

Here, Plaintiff exercised her rights under the FMLA by requesting leave, and Defendant provided her all of her requested leave and did not interfere with Plaintiff's ability to take *any* of her leave. To wit, every single time that Plaintiff requested leave in her years of employment, Defendant provided it.  Even when Plaintiff exhausted her FMLA leave, she received additional leave under the CBA, and when that was exhausted, Plaintiff received even more leave under the ADA. Even after there was suspicion that Plaintiff abused her leave in 2017, she was provided FMLA, CBA, and ADA leave.  Because of this, Plaintiff cannot provide any evidence that her exercising her rights under the FMLA was interfered with, restrained, or denied, as Plaintiff received the entirety of her leave entitled to her, *and then some*. Based on her inability to meet every element of her interference claim, the Court should grant summary judgment in Defendant's favor for this alone.

Even so, pursuant to Plaintiff's own actions outside of work, it is apparent that her leave was not medically necessary. The employee seeking leave bears the burden of establishing that she had a serious health condition as defined by the FMLA. *Sims v. Alameda–Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253, 1264 (N.D. Cal. 1998); *Rozairo v. Wells Fargo Bank Nat'l Ass'n*, No. 3:17-CV-00012-SI, 2019 WL 3219328, at *4 (D. Or. July 17, 2019). A failure "to present evidence that [Plaintiff] was suffering from a serious health condition that made [her] unable to perform the functions of [her] position, at the time of [her] termination" is "'fatal to [her] case.'" *Nelson v. Fiskars Brands, Inc.*, 2015 WL 5566454, at *12 (D. Or. Sept. 13, 2015) (quoting *Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452 (6th Cir. 2005)). "When "[t]here is no basis on the record to conclude that Plaintiff's health rendered [her] unable to perform [her] professional duties . . . Plaintiff has not established that leave was medically necessary." *Lynch v. Klamath Cty. Sch. Dist.*, 2015 WL 2239226, at *5 (D. Or. May 12, 2015) (citing 29 U.S.C. § 2612(a)(1)(D).

Plaintiff's FMLA paperwork submitted by her doctor specifically stated, "When she's unable to walk – she's to stay home!" **Ex. 14.**  Moreover, this same paperwork that was submitted to Defendant provides, "Patient has a chronic ankle condition that requires rest & time off [for] flair [sic] ups. [Patient] needs to reduce heel height on shoes to improve condition. Chronic ankle condition –

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

12

2:19-CV-01174-APG-BNW

1   needs time off when she can't walk!"  *Id.*  Pursuant to this, Defendant provided Plaintiff intermittent

2   leave when her ankle flared up. Despite Plaintiff's doctor's representation to Defendant, prior to her

3   shift on March 21, 2017, Plaintiff wore "brand new" high heels to a gender reveal party for hours. ***See***

4   **Ex. 17; *see also* Ex. 2 at 78:3–5; Ex. 30.**  It does not follow that Plaintiff's chronic ankle condition

5   prevents her from wearing heels at work, but she can wear heels outside of work. Plaintiff's own

6   decision to wear high heels for hours outside of work despite her ankle condition and despite the

7   representations she and her doctor made to Defendant demonstrate that the leave that was provided to

8   Plaintiff was *not* medically necessary.  Moreover, it is undisputed that after Plaintiff called off for her

9   shift, where she represented that she needed FMLA that had been approved for when she could not

10  walk pursuant to the FMLA certification form, Plaintiff stayed out at Town Square, engaging in

11  unnecessary walking going from her car to GameWorks and back to her car.  Pursuant to this, the

12  Court should grant summary judgment on Plaintiff's first claim for relief.

13       The facts of this case are analogous to the facts in *Dunger v. Union Pac. R.R. Co.*, No. CV 18-

14  6374 PA (SSX), 2019 WL 3249606, at *1 (C.D. Cal. June 3, 2019), where summary judgment was

15  entered in favor of the employer on the employee's claims for, *inter alia*, FMLA interference and

16  disability discrimination.  In *Dunger*, the employee had requested and was granted multiples leaves of

17  absence during the course of his employment suffering no negative consequences.  The employee was

18  also granted intermittent FMLA leave.  The employee called in for his graveyard shift (10 p.m.–6:00

19  a.m.) on the two days prior to a pre-planned boating trip and reported the reason for his absence as

20  FMLA leave. Despite reportedly not feeling well, the employee attended the daytime boating trip the

21  next day but then again called out for his shift later that night reporting his absence as FMLA related.

22  The employer learned that the employee was on the boating trip after seeing him in a Facebook live

23  video.  In light of such, the employer charged the employee with dishonesty for improper FMLA use

24  and proceeded to terminate his employment.

25       The employee contested the charge claiming that he was neither dishonest nor did he misuse

26  his FMLA leave by attending the boating trip.  First, the employee argued that the boating trip was

27  between his shifts, so he did not miss a shift in order to attend the trip.  Second, the employee claimed

28  that he did not engage in any activity on the boating trip from which he was restricted by his medical

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

13                                    2:19-CV-01174-APG-BNW

1    condition. Nevertheless, the court entered judgment in favor of the employer because none of the

2    evidence presented by the employee demonstrated that the employer impermissibly used his taking of

3    FMLA leave as a factor in the decision to terminate his employment. In reaching this conclusion, the

4    court noted that the employee had a history of receiving FMLA leave without negative repercussions

5    from the employer. The court further stated, "[e]ven if Plaintiff was able to successfully identify flaws

6    in [the defendant's] reasons for Plaintiff's termination, Plaintiff has provided no basis to infer that [the

7    defendant] relied upon anything other than Plaintiff's dishonesty, which is a lawful basis for

8    termination, in terminating him." *Id.* at *5.

9        Like the employee in *Dunger,* Plaintiff had taken leave multiple times while employed by

10   Defendant without any negative repercussions. It is nonsensical that Defendant approved over 20

11   separate medically-related leaves of absence for Plaintiff beginning in 2009, including intermittent

12   FMLA leave since 2016, only to terminate her in 2017 for using such leave. Moreover, Plaintiff was

13   not forthcoming or honest regarding remaining at Town Square at GameWorks after the gender reveal

14   party. This alone demonstrates the extent of Plaintiff's dishonesty surrounding this event.

15       Notwithstanding the lack of any violation of the FMLA, even if there were a triable issue of

16   fact, Plaintiff's FMLA claim nevertheless cannot survive summary judgment so long as there was a

17   good faith belief by the employer of misuse or dishonesty, which is the case here. *See Moore v.*

18   *California Dep't of Corr. & Rehab.*, No. CV F 10-1165 LJO SMS, 2012 WL 5288785, at *10 (E.D.

19   Cal. Oct. 24, 2012) (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 .3d 672, 676–77 (7th Cir.

20   1997) (stating that the question is not whether the employer's reasons for a decision are right but

21   whether the employer's description of its reasons is honest)). Specifically, Defendant can rebut

22   Plaintiff's allegations "by producing admissible evidence, sufficient to raise a genuine issue of fact

23   and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory

24   reason." *Thomas v. Wayfair Inc.*, No. 5:19-CV-01196-ODW(GJSX), 2021 WL 212696, at *4 (C.D.

25   Cal. Jan. 21, 2021). Pursuant to Defendant's investigation, Defendant held the honest belief that

26   Plaintiff misused her FMLA leave, further warranting summary judgment on this claim.

27       Moreover, as noted *supra*, Plaintiff had accumulated a number of attendance points during her

28   last months of employment. ***See* Exs. 8, 9.** In fact, Plaintiff was on a final warning for attendance at

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

14                                    2:19-CV-01174-APG-BNW

the time she attended the gender reveal party, and if she had called out again, she was subject to immediate suspension and potentially termination. **Ex. 9.** Plaintiff was fully aware that she had problems with her lower extremities.  Yet, she wore a new pair of high heels to the party right before she was scheduled to work a full evening shift.  The evidence shows that Plaintiff had no intention to report to work that evening and that she only used her FMLA leave to avoid exceeding attendance points. Plaintiff attempted to misuse her FMLA to excuse her absence and continue socializing for the night. Because of this, Defendant did not interfere with Plaintiff's leave, and Plaintiff's FMLA interference claim utterly fails. Accordingly, Plaintiff's FMLA interference claim fails, and the Court should grant summary judgment in Defendant's favor for Plaintiff's first cause of action.

### 2. Defendant Did Not Retaliate Against Plaintiff under the FMLA Because It Conducted a Good Faith Investigation That Determined That Plaintiff Misused Her FMLA Leave.

While the Ninth Circuit has decided FMLA interference and retaliation claims with some overlap, a recent Ninth Circuit court and courts in this District find that to establish a *prima facie* case for retaliation under the FMLA, a plaintiff must establish by a preponderance of the evidence that: (1) she engaged in a protected activity under the FMLA; (2) she suffered some adverse employment action by the employer following the protected activity; and (3) the adverse employment action was causally linked to the protected activity. *See Hazelett v. Wal-Mart Stores, Inc.*, 829 F. App'x 197, 202 (9th Cir. 2020); *see also Browett v. City of Reno*, 237 F. Supp. 3d 1040, 1046 (D. Nev. 2017); *Raymond v. Albertson's Inc.*, 38 F. Supp. 2d 866 (D. Nev. 1999) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–209 (10th Cir. 1997)).

Here, Plaintiff cannot prove that her termination was causally linked to her taking leave under the FMLA.  Plaintiff taking leave and using leave under the FMLA is not what caused her termination. Rather, Plaintiff was terminated based upon Defendant's good faith belief that she was not truthful about the need to utilize intermittent FMLA on March 21, 2017, when she represented to Defendant that she needed to take FMLA leave shortly before she was scheduled to work when she was out socially and wearing high heels—the purported reason for her needing intermittent leave in the first place. Plaintiff was still provided the leave.  But it was Plaintiff's dishonesty related to why she was taking the leave that resulted in her termination—not the leave itself.  To further support this,

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

15                                                    2:19-CV-01174-APG-BNW

Defendant did not conclude its investigation or terminate Plaintiff until after she returned to work, which was almost seven months after this incident. Defendant allowed Plaintiff to exhaust *numerous* leaves before even concluding its investigation into Plaintiff's dishonesty, which demonstrates that her termination was not for the time away.  Defendant did not interfere with any of her leaves or interrupt any of her leaves—it allowed her to take the 7 months of leave, and as soon as she returned, the Company continued its investigation into her March 21, 2017 misuse of leave.  There is no evidence that Defendant acted in retaliation to interfere with Plaintiff's FMLA rights.  Rather, the evidence clearly reflects that Plaintiff had no intention to report to work on the evening of March 21, 2017, and she used her previously approved FMLA leave as an excuse. Plaintiff is not entitled to summary judgment simply because she did not feel like working.

In any event, Plaintiff is unable to produce evidence proving by a preponderance of the evidence that she was terminated for taking FMLA leave.  Even if Plaintiff argues that Defendant's reasons for termination were incorrect, Plaintiff nevertheless cannot survive summary judgment so long as Defendant honestly believed those reasons. *See Moore v. California Dep't of Corr. & Rehab.*, No. CV F 10-1165 LJO SMS, 2012 WL 5288785, at *10 (E.D. Cal. Oct. 24, 2012) (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 .3d 672, 676–77 (7th Cir. 1997) (stating that the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest)).  Specifically, Defendant can rebut Plaintiff's allegations "by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory reason." *Thomas v. Wayfair Inc.*, No. 5:19-CV-01196-ODW(GJSX), 2021 WL 212696, at *4 (C.D. Cal. Jan. 21, 2021).

Defendant did just that. Specifically, Defendant conducted a good faith investigation into Plaintiff's purported leave and found that Plaintiff had misused her FMLA by wearing high heels to attend a social event. Defendant did not terminate Plaintiff while she was on her leave, and in fact, Defendant waited until almost 7 months after Plaintiff's misuse of the FMLA and after she exhausted her leave to complete the investigation into her misuse. Upon Plaintiff's return from her leave, Defendant continued to conduct interviews, received statements, and determined it had enough evidence to terminate Plaintiff for willful misconduct, dishonesty, and misuse of FMLA/ADA. ***See***

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

16

2:19-CV-01174-APG-BNW

**Exs. 21, 30, 32, 33, 36.** Accordingly, Defendant did not impermissibly consider FMLA leave in terminating Plaintiff—Plaintiff's dishonesty and misuse of the FMLA was permissibly considered after she returned from her leave. *See Botelho v. Mayorkas*, No. CV 18-00032 ACK-WRP, 2021 WL 4497471, at *5 (D. Haw. Sept. 30, 2021) (finding that "the FMLA abuse investigation and subsequent termination cannot be considered retaliatory").

Stated differently, Plaintiff was not terminated for taking FMLA leave or for her use of FMLA leave, but she was terminated for engaging in dishonesty in representing that she was taking FMLA leave when she was wearing high heels that warranted her leave in the first place and remained out socially after calling off work. *Bernal v. United Parcel Serv. Co.*, No. EDCV0801579VAPOPX, 2009 WL 10671151, at *4 (C.D. Cal. Dec. 8, 2009) (granting summary judgment for the defendant for a plaintiff's FMLA interference claim in finding that the plaintiff's termination for misusing the FMLA warranted summary judgment as the plaintiff was not terminated "because he took FMLA leave, or that his use of FMLA leave was a negative factor in his discharge," but because the plaintiff "engaged in dishonesty by misrepresenting to the Company that you were legitimately using FMLA leave on November 1 and 26, 2007 and March 10, 20088 [sic] when you in fact were not doing so"). Indeed, the FMLA "does not prohibit the termination of an employee who abuses her leave," nor "does it shield an employee from dismissal merely because the alleged misconduct occurred while on leave." *Warwas v. City of Plainfield*, 489 F. App' x 585, 588 (3d Cir. 2012) (citing *Callison v. City of Phila.*, 430 F.3d 117, 121 (3d Cir. 2005); *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006)). The same holds true here. Accordingly, Plaintiff's FMLA retaliation claim fails, and the Court should grant summary judgment in Defendant's favor for Plaintiff's first cause of action in its entirety.

**B.      Plaintiff's Second Cause of Action for Violation of The ADA Fails Because Plaintiff is Unable To Prove Her *Prima Facie* Case Under Either a Failure to Accommodate or Disparate Treatment.**

The ADA contemplates two types of discrimination: disparate treatment and failure to accommodate. *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004). Plaintiff's claim is premised on separate acts: (1) a failure to accommodate in not providing flat shoes and floor mats while Plaintiff was working and (2) her termination under a disparate treatment theory. Under either

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

1    theory, Plaintiff's claim fails.[2]

2              1.    **Defendant Accommodated Plaintiff.**

3              To establish a *prima facie* failure to accommodate claim under the ADA, Plaintiff must prove,

4    by a preponderance of the evidence, that: (1) she requested an accommodation due to a disability; and

5    (2) Defendant could have made a reasonable accommodation that would have enabled Plaintiff to

6    perform the essential functions of the job.  *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112-14 (9th

7    Cir. 2000), *vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 405-06 (2002).

8    "[O]nce an employee requests an accommodation . . . the employer must engage in an interactive

9    process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S.*

10   *Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *see also* 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R.

11   § 1630.2(o)(3). To survive summary judgment, the employee must identify a facially reasonable

12   accommodation. *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). And the Court "should

13   weigh the risks and alternatives, including possible hardships on the employer, to determine whether

14   a genuine issue of material fact exists as to the reasonableness of the accommodation." *Nunes v. Wal-*

15   *Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).  "A leave of absence for medical treatment

16   may be a reasonable accommodation under the ADA." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d

17   1128, 1135 (9th Cir. 2001) (citing 29 C.F.R. 1630 app. § 1630.2(o)).

18             Plaintiff's failure to accommodate claim is wholly without merit. No evidence exists that

19   Plaintiff requested an accommodation based on her purported disability that she was not granted, and

20   this alone causes her claim to fail.  While Plaintiff claims that she should have been allowed to wear

21   flats, her certification from her doctor did not require flats, and WLV allows shoes with as low as a ¼

22   inch heel to be worn at work. ***See* Exhibit 37, Memorandum Providing Permitted Shoes to Cocktail**

23   **Servers**. Plaintiff's treating physician confirmed she was able to wear a low heel, only. ***See* Exs. 14,**

24   **32.**  More importantly, Plaintiff admitted that WLV provided her with a range of heel height options,

25

26   ---
     [2] Because the language of NRS § 613.330 is nearly identical to the ADA, and because the Nevada
27   Supreme Court looks to federal discrimination cases for guidance in applying state anti-discrimination
     laws, Plaintiff's state disability discrimination claims are treated under a single legal framework.  *See*
     *Hirschhorn v. Sizzler Restaurants International, Inc*., 913 F. Supp. 1393, 1398 (D. Nev. 1995) (citing
28   *Apeche v. White Pine County*, 96 Nev. 723 (1980)). Therefore, the analysis for this section applies to
     both of Plaintiff's allegations under the ADA and NRS § 613.330.

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

18                                    2:19-CV-01174-APG-BNW

and she selected two options of shoes, including a lower heel option. **Ex. 2 at 101:5–23**. Plaintiff then used her discretion to decide which pair of shoes to wear. *Id.* Additionally, Plaintiff testified that on the single occasion she wore flat shoes, she was informed she needed an approved accommodation to wear them, and Ms. Espino-Cascos reached out to her to engage in the interactive process, but Plaintiff failed to meet with her. *Id.* **at 99:22–100:20; 154:19–155:15.** Moreover, Plaintiff was provided leaves of absence under the FMLA, the CBA, and under the ADA, and she took seven months of this leave in 2017 prior to her termination. *See* **Ex. 18 at 61:5–23;** *see also* **Exs. 22, 23, 24, 25, 26.** Mats were also placed at the Tower Suites Bar. *See* **Ex. 16 at 129:16–25.** It therefore does not follow that Defendant permitted Plaintiff to wear shoes as low as ¼ inch, provided her seven months of leave in 2017, and placed mats at the Tower Suites Bar where Plaintiff was stationed, but then allegedly failed to accommodate Plaintiff due to her disability. Accordingly, there is no genuine issue of material fact that Defendant accommodated Plaintiff, and the Court should therefore grant summary judgment in Defendant's favor for this claim.

### a.    Any Failure to Accommodate Claim With Respect to Heel Height or Mats was Not Administratively Exhausted, Preventing Plaintiff From Bringing this Claim.

In 2019, the U.S. Supreme Court held that the charge-filing requirement for Title VII claims, while not jurisdictional, is a mandatory processing rule and pre-requisite to suit. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850–51 (2019). The procedural requirements for filing an ADA claim incorporates Title VII's administrative procedures, so an ADA claimant must also exhaust her administrative remedies against a party before filing a claim in federal court. 42 U.S.C. § 12117; *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 n.7 (10th Cir. 2018); *Lawson v. Jason Pharm., Inc.*, No. 3:17-CV-2648-L, 2019 WL 2448849, at *3 (N.D. Tex. June 12, 2019); *Vasquez v. Kiewit Infrastructure W., Co.*, No. CV 19-00513 HG-WRP, 2020 WL 2842671, at *3 (D. Haw. June 1, 2020). If a plaintiff's complaint alleges wrongdoing that falls outside of the charging document or the administrative agency's investigation, then the plaintiff failed to exhaust her administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (citing *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (discussing scope); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (discussing timing)).

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

19

2:19-CV-01174-APG-BNW

1    Each discrete incident of discriminatory or retaliatory treatment constitutes its own unlawful

2  employment practice for which administrative remedies must be exhausted. *See Nat'l Railroad*

3  *Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The requirement to exhaust administrative remedies

4  requires a plaintiff to file a timely charge within 300 days of the incident with the EEOC, thereby

5  allowing that agency time to investigate the charge. *See* 42 U.S.C. § 2000e-5(a) (empowering the

6  EEOC to prevent unlawful employment practices); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d

7  1091, 1099 (9th Cir. 2002) ("The administrative charge requirement serves the important purposes of

8  giving the charged party notice of the claim and 'narrowing the issues for prompt adjudication and

9  decision.'"). Similarly, any claim arising under Nevada's anti-discrimination statutes must be

10  administratively exhausted within 180 days of the incident prior to seeking redress in court by filing a

11  charge with the NERC and having that agency adjudicate the charge or provide a right to sue letter.

12  *Palmer v. State Gaming Control Bd.*, 787 P.2d 803, 804 (Nev. 1990).

13    Here, Plaintiff's allegations related to heel height and mats fall outside of the charging

14  document and the administrative agency's investigation, demonstrating that Plaintiff failed to exhaust

15  her administrative remedies. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002),

16  *as amended* (Feb. 20, 2002). Specifically, Plaintiff's amended charge does not mention any sort of

17  failure to accommodate by Defendant related to either high heels or mats. ***See* Exhibit 38, Plaintiff's**

18  **Amended Charge of Discrimination dated March 2, 2018**. In failing to include these allegations,

19  Plaintiff prevented the investigating agency from focusing its investigation on anything outside of her

20  disparate treatment claim. Indeed, a plaintiff must include in a charge of discrimination all claims that

21  mandate exhaustion of administrative remedies in order to allow the EEOC or state agency to properly

22  investigate the ambit of the plaintiff's allegations. *See Freeman v. Oakland Unified Sch. Dist.,* 291

23  F.3d 632, 637 (9th Cir. 2002) (holding that where a plaintiff's EEOC charge only alleged

24  discrimination within the context of a school faculty election, "[a] reasonable EEOC investigation of

25  that charge would not have focused on anything beyond [that event].").  Because Plaintiff's charge

26  does not present a theory of a failure to accommodate under the ADA based on heel heights or mats,

27  Plaintiff's failure to accommodate claim warrants summary judgment entered in Defendant's favor.

28    Moreover, Plaintiff did not timely exhaust her failure to accommodate claim as it relates to

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

20                    2:19-CV-01174-APG-BNW

mats.  Plaintiff filed her charge of discrimination in 2018. ***See* Ex. 38.**  Plaintiff testified that she complained about needing mats at the Tower Lobby Bar, where she was stationed, when the Tower Lobby Bar opened in 2012. ***See* Ex. 2 at 159:20–24.**  This six-year difference is well beyond the 180-day requirement of the Nevada Equal Rights Commission, with whom Plaintiff filed her charge of discrimination, and the 300-day requirement with the EEOC.  Accordingly, Plaintiff's failure to accommodate claim pertaining to mats was not only not exhausted, but also it is untimely.  As such, the Court should grant summary judgment for Defendant for this claim.

## 2.    Plaintiff's Disparate Treatment Claim Fails.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that: (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual with a disability; and (3) she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).  For purposes of a disparate treatment claim, an adverse employment action is an action that materially affects the compensation, terms, conditions, and privileges of employment. *Davis v. Team Elec. Co.,* 1080, 1089 (9th Cir. 2008) (defining adverse employment action in the context of Title VII discrimination claim).  The concept of what constitutes an adverse employment action is the same under Title VII and the ADA.  *See Bos v. Sparks Tribune, LLC*, 2010 U.S. Dist. LEXIS 72493, *9 n. 5 (D. Nev. 2010).

### a.    Plaintiff's Volitional Outside of Work Activities Demonstrate that She is Not Disabled Within the Meaning of the ADA.

Plaintiff is unable to prove that she is disabled within the meaning of the ADA, causing her ADA claim to fail on this alone.  A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1). A person is impaired under the ADA if the impairment "limit[s] a major life activity, and the limitation on the major life activity [is] substantial." *EEOC v. U.S. Parcel Serv., Inc.*, 306 F.3d 794, 801 (9th Cir. 2002).  Major life activities are defined as important living functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A person's major life activities are "substantially limited" if that person is unable to perform a major life activity or is "significantly restricted" in his or her ability to do so compared

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

21                                    2:19-CV-01174-APG-BNW

1    to the "average person in the general population." 29 C.F.R. § 1630.2(j).

2          Here, Plaintiff is clearly not disabled under the ADA. Specifically, Plaintiff's alleged disability

3    is "chronic inflammatory ankle condition." (*See* Compl. at ¶ 83). Plaintiff submitted a medical

4    certification stating that she should not wear heels, and she even alleges that her purported requested

5    accommodation was to wear flats. (*See id.* at ¶ 89); *see also* **Exs. 14, 32.** In spite of this, Plaintiff

6    chose to wear brand new high heels to a baby shower. *See* **Ex. 17**. Pursuant to Plaintiff's outside of

7    work activities, it is clear that Plaintiff's "chronic inflammatory ankle condition" does not substantially

8    limit her major life activities, even including the fact that she still wears high heels despite this

9    purported condition. Moreover, Plaintiff is still serving cocktails at Caesar's Palace on the strip,

10   demonstrating that her purported disability does not substantially limit her ability to walk or work.

11   *See* **Ex. 2 at 21:6–11.** Accordingly, Plaintiff's claim for disparate treatment under the ADA fails on

12   this alone, and because Plaintiff is not disabled under the ADA, the Court should grant summary

13   judgment in Defendant's favor.

14
15           **b.**    **Even Considering Plaintiff's Purported Ankle Condition As a Disability under the ADA, Plaintiff is Not A Qualified Individual.**

16         "An individual is qualified if with or without a reasonable accommodation, she can perform

17   the essential functions of the employment position." *Samper v. Providence St. Vincent Med. Ctr.*, 675

18   F.3d 1233, 1237 (9th Cir. 2012). "If a disabled person cannot perform a job's 'essential functions'

19   (even with a reasonable accommodation), then the ADA's employment protections do not apply."

20   *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 989 (9th Cir. 2007) (quoting *Cripe v. City of San*

21   *Jose*, 261 F.3d 877, 884-85 (9th Cir. 2001)).

22         Here, assuming Plaintiff is considered to be disabled, which Defendant disputes, she is not a

23   qualified individual with a disability, Plaintiff's medical documentation states that she is unable to

24   stand for long periods of time. **Ex. 14.** Moreover, Plaintiff's provider stated that when Plaintiff is

25   unable to walk, she is to stay home. *Id.* According to the Job Summary, standing for 26–50% of the

26   time and walking for more than 75% of the time are essential functions of the cocktail server position.

27   **Ex. 3.** Because Plaintiff was unable to stand and unable to walk as required for the position, and no

28   reasonable accommodation could be made to allow her to perform those functions, Plaintiff is not a

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

22                                                    2:19-CV-01174-APG-BNW

qualified individual with a disability for purposes of the ADA. Because Plaintiff cannot satisfy this element, summary judgment is warranted on this claim.

### c.    Plaintiff Was Not Terminated Because of Her Purported Disability.

Even if Plaintiff were to be considered disabled under the ADA, and even if Plaintiff were qualified for the position, Plaintiff is still unable to prove that she suffered an adverse employment action because of her disability. Specifically, Plaintiff was terminated not because of her disability but because Defendant concluded she misused her FMLA leave to wear high heels to social events for hours on end. There is no competent evidence that Plaintiff's termination was for any reason other than the findings of Defendant's investigation into the misuse of FMLA on March 21, 2017. Plaintiff offers no evidence to show that she was terminated because of her disability. *See Caberto v. Nevada ex rel. Dep't of Health & Hum. Servs., Pub. & Behav. Health*, No. 2:18-CV-01034-APG-DJA, 2020 WL 5370945, at *3 (D. Nev. Sept. 8, 2020) (granting summary judgment for the defendant when the plaintiff proffered no evidence that she was terminated because of her disability). Defendant did not terminate Plaintiff because of her condition or her leave. Rather, Defendant terminated Plaintiff because she abused her approved FMLA leave by calling out for her shift by utilizing leave certified to be needed when she could not walk and needed to stay home, yet staying out to socialize afterwards. Because Plaintiff is unable to prove any of the elements of a disparate treatment claim, or any sort of violation under the ADA, the Court should grant summary judgment in Defendant's favor on Plaintiff's second cause of action in its entirety.

### C.    There is No Causal Connection Between Any Purported Protected Activity and Plaintiff's Termination, Causing Plaintiff's Third Cause of Action for Retaliation in violation of the ADA to Be Legally Deficient.

To prove retaliation, a plaintiff must show three things: (1) involvement in a protected activity; (2) a "materially adverse" employment action; and (3) a causal link between the two events. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).[3] To prove a "causal link," the plaintiff

---

[3] Similar to Plaintiff's ADA claim, because the language of NRS § 613.340 is nearly identical to federal retaliation under the ADA, and because the Nevada Supreme Court looks to federal discrimination cases for guidance in applying state anti-discrimination laws, Plaintiff's state retaliation claims is treated under a single legal framework. *See Hirschhorn*, 913 F. Supp. at 1398. Therefore, the analysis for this section applies to both of Plaintiff's allegations under the federal retaliation statute and NRS § 613.340.

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

23                                    2:19-CV-01174-APG-BNW

1    must show that "but for" the plaintiff engaging in a protected activity, the plaintiff would not have

2    suffered an adverse action. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473

3    (9th Cir. 2015). If Plaintiff is able to establish a *prima facie* case of retaliation, then the *McDonnell*

4    *Douglas* framework applies, shifting the burden to Defendant to show a non-retaliatory justification

5    for the challenged action, and then back to Plaintiff to show that the proffered justification is

6    pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973). Plaintiff is unable to prove

7    the first and third elements of her retaliation claim.

8                  **1.      Plaintiff Did Not Engage in A Protected Activity.**

9            An employee's protected activity includes opposing any act or practice by the employer that

10    violates the ADA and pursuing rights guaranteed by the statute such as requesting a reasonable

11    accommodation. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004).; *see also Denning*

12    *v. Washoe Cty.*, No. 3:17-cv-00463-MMD-WGC, 2018 WL 4286185, at *4 (D. Nev. Sept. 7, 2018),

13    *aff'd sub nom. Denning v. Cty. of Washoe*, 799 F. App'x 547 (9th Cir. 2020).

14            Here, no evidence exists demonstrating that Plaintiff requested a reasonable accommodation

15    or complained about being discriminated against due to her purported disability.  Specifically, Plaintiff

16    cannot identify a single conversation where she engaged in a protected activity, and she therefore

17    cannot prove that she made a complaint of an allegedly wrongful employment practice. *See Panelli v.*

18    *First Am. Title Ins. Co.*, 704 F. Supp. 2d 1016, 1026 (D. Nev. 2010) (citing *Garcia–Paz v. Swift*

19    *Textiles*, 873 F. Supp. 547, 560 (D. Kan. 1995) (noting that "employers need not approach every

20    employee's comment as a riddle, puzzling over the possibility that it contains a cloaked complaint of

21    discrimination" and that an employee's communications to the employer must "sufficiently convey

22    the employee's reasonable concerns that the employer has acted or is acting in an unlawful

23    discriminatory manner")).  Because of this, Plaintiff is unable to show that she engaged in any sort of

24    protected activity, and her retaliation claim fails on this alone.

25
26                  **2.      Plaintiff's Termination was Not Motivated by Animus Inspired by Her Nonexistent Protected Conduct.**

27            Even if, *arguendo*, Plaintiff did engage in protected conduct, there is no causal connection

28    between her purported protected conduct and her termination.  Claims for retaliation under the ADA

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

24

2:19-CV-01174-APG-BNW

1    are evaluated under the more demanding "but for" causation standard.  *Murray v. Mayo Clinic*, 934

2    F.3d 1101 (9th Cir. 2019) (affirming jury instruction providing the plaintiff must prove his discharge

3    was "because of" his disability).  This standard requires proof that the unlawful retaliation would not

4    have occurred in the absence of the alleged wrongful action or actions of the employer.  *Univ. of Texas*

5    *Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

6          If the temporal proximity is not "very close" to the protected activity, then causation cannot be

7    inferred. *See Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003); *Clark Cty. Sch. Dist.*

8    *v. Breeden*, 532 U.S. 268, 273 (2001). This Circuit has "required temporal proximity of less than three

9    months between the protected activity and the adverse employment action for the employee to

10   establish causation . . . ." *Mahoe v. Operating Eng'rs Local Union No. 3*, No. CIV. 13-00186 HG-

11   BMK, 2014 WL 6685812, at *8 (D. Haw. Nov. 25, 2014) (citing *Yartzoff v. Thomas*, 809 F.2d 1371,

12   1376 (9th Cir. 1987)); *see Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (finding that

13   two months was sufficient); *Serlin v. Alexander Dawson Sch., LLC*, 656 F. App'x 853, 856 (9th Cir.

14   2016) (finding that three months was too long); *Brown v. Dep't of Public Safety*, 446 Fed. App'x. 70,

15   73 (9th Cir. 2011) (finding that five months was too long); *Pickens v. Astrue*, 252 F. App'x 795, 797

16   n.2 (9th Cir. 2007) (same); *Vasquez v. County of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (finding that

17   thirteen months was too long).

18         Here, Plaintiff's termination was not the but-for cause for her nonexistent protected activity.

19   Initially, there is no evidence of temporal proximity between Plaintiff requesting leave and her

20   termination.  Plaintiff took her first medical leave with Defendant as early as 2009, and she began

21   taking leave for her purported disability related to her ankle condition in 2016. ***See* Ex. 13.**  Because

22   the Ninth Circuit holds that three months of time is too long, the fact that over a year lapsed between

23   Plaintiff's intermittent leave and her termination is insufficient to demonstrate temporal proximity,

24   causing Plaintiff's retaliation claim to utterly fail. As discussed *supra*, Plaintiff's termination was

25   solely due to her own willful misconduct and dishonesty due to her misuse of FMLA leave.

26         Ultimately, when Plaintiff had exhausted all of her leave under the FMLA and the CBA, the

27   Company accommodated her with additional leave under the ADA.  This is the direct opposite of

28   retaliation. Moreover, Defendant conducted a thorough and good faith investigation prior to

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

25                                    2:19-CV-01174-APG-BNW

terminating Plaintiff because of her dishonesty, further demonstrating that Plaintiff's termination was solely due to a non-retaliatory justification, mainly, Plaintiff's misuse of the FMLA and her dishonesty. Plaintiff additionally has no evidence that any similarly situated individuals were treated differently. Pursuant to the foregoing, Defendant's reasons for terminating Plaintiff were not pretextual, and Plaintiff's retaliation claim fails. Accordingly, the Court should grant summary judgment in Defendant's favor on Plaintiff's third cause of action.

> **D.**    **Plaintiff is Unable to Offer a Scintilla of Evidence in Support of Three of the Four Elements of A Negligent Hiring, Training, and Supervision Claim, and Because of This, Summary Judgment is Warranted for Plaintiff's Fourth Cause of Action.**

As an initial matter, Plaintiff's claim for negligent hiring, training, and supervision is based directly and solely upon the allegation that Defendant failed to supervise, train, and hire personnel with respect to medical leaves and absences—the same allegations she asserts to support her claims for violation of the FMLA and ADA. When an adequate statutory remedy exists, the Nevada Supreme Court has repeatedly and uniformly held that no *additional* tort remedies under common law are available because it would be unfair to the defendant. *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (citing *D'Angelo v. Gardner*, 107 Nev. 704, 720 (1991)). Therefore, on this basis alone, Plaintiff's negligent hiring, training, and supervision claim based directly upon her allegations of disability discrimination and interference/retaliation for taking FMLA leave fail entirely because an adequate statutory remedy exists in the ADA and FMLA. The Court should therefore grant summary judgment on this claim on this basis.

If the Court were to address the merits of the claim, in order to survive summary judgment for a negligent hiring, training, and supervision claim in Nevada, a plaintiff must prove by a preponderance of the evidence that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty by hiring, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of the plaintiff's injuries; and (4) damages. *LeBarron v. Interstate Grp., LLC*, 529 F. Supp. 3d 1163, 1176 (D. Nev. 2021) (citing *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996)). Plaintiff must specifically show "how [her] employer violated its duty." *Reece v. Republic Servs., Inc.*, No. 2:10-cv-00114, 2011 WL 868386, at *11 (D. Nev. Mar. 10, 2011). "Nevada law does not permit the inference

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

26                                                                2:19-CV-01174-APG-BNW

that an employer was negligent in training or supervising simply because [its] employees acted in a discriminatory manner." *Id.* Because otherwise, any violations of the FMLA or ADA could too easily lead to potential derivative liability for negligent hiring, training, and supervision. *See LeBarron*, 529 F. Supp. at 1176.  In order to prevail on a negligent training or supervision claim, the plaintiff must offer evidence that the employer violated its duty. *Romero v. Nevada Dep't of Corr.*, No. 2:08-CV-808-JAD-VCF, 2013 WL 6206705, at *17 (D. Nev. Nov. 27, 2013); *Colquhoun v. BHC Montevista Hospital, Inc.*, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010). "[T]he fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision." *Colquhoun*, 2010 WL 2346607, at *3.

Here, there is absolutely no evidence that Defendant breached its duty of care to Plaintiff, let alone that Defendant hired employees that Defendant knew or should have known have dangerous propensities.  Preliminarily, Plaintiff cannot identify any competent evidence establishing a standard of care with respect to Defendant's investigation into Plaintiff's misuse of FMLA that was breached. In addition, even if the Court were to find that Defendant's employees acted discriminatorily—which they did not—Nevada law does not permit the inference that an employer was negligent in training or supervising simply because Defendant's employees acted in a discriminatory manner. *See Romero*, 2013 WL 6206705, at *17. Plaintiff cannot provide a scintilla of evidence that any of Defendant's employees acted dangerously towards Plaintiff or even that Defendant failed to train, hire, or supervise any employee. Nor does Plaintiff have any evidence of physical harm or even a threat of physical harm resulting from Defendant's alleged negligence, which is a necessary element for Plaintiff's claim. *See LeBarron*, 529 F. Supp. 3d at 1177 (citing *Reece*, 2011 WL 868386, at *11).  Because of this, summary judgment in Defendant's favor is warranted for this claim. *See, e.g.*, *LeBarron*, 529 F. Supp. 3d at 1177 (granting summary judgment for the defendant in finding that the plaintiff offered no evidence that departments were negligently trained or supervised leading up to the plaintiff's termination); *Hutchinson v. Glob. Experience Specialists, Inc.*, No. 2:16-CV-02397-MMD-GWF, 2018 WL 6308726, at *4 (D. Nev. Dec. 3, 2018) (granting summary judgment in favor of the defendant on the plaintiff's negligent hiring, training, and supervision claim because the plaintiff had failed to show a necessary element under Nevada law); *Romero*, 2013 WL 6206705, at *17 (granting summary

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

27

2:19-CV-01174-APG-BNW

judgment in favor of the defendant because the plaintiff had failed to pled or offer a scintilla of evidence to suggest that the defendants failed to train, hire, or supervise any employee or that such negligence was contributable to an employee's death while on the job). Accordingly, in addition to the rest of Plaintiff's causes of action, the Court should grant summary judgment on Plaintiff's fourth cause of action.

## V.    CONCLUSION

Based upon the foregoing, Defendant is entitled to summary judgment in its favor for each of Plaintiff's causes of action. Accordingly, Defendant respectfully requests that this Court grant its Motion for Summary Judgment, thereby disposing of this case in its entirety and entering final judgment in its favor.

Dated: November 29, 2021

LITTLER MENDELSON P.C.

_Wendy M Krincek_

Wendy Medura Krincek
Kelsey E. Stegall

Attorneys for Defendant
WYNN LAS VEGAS, LLC

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

28

2:19-CV-01174-APG-BNW

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169.  On November 29, 2021, I served the within document(s):

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

☒ BY **Email** - by e-mailing a copy of the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

☒ By **CM/ECF Filing** – Pursuant to FRCP 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Christian Gabroy, Esq.
Kaine Messer, Esq.
GABROY LAW OFFICES
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, NV 89012

Attorneys for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 29, 2021 at Las Vegas, Nevada.

*/s/ Maribel Rodriguez*
Maribel Rodriguez

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169.5937
702.862.8800

29                                    2:19-CV-01174-APG-BNW