WENDY MEDURA KRINCEK, ESQ., Bar # 6417
KELSEY E. STEGALL, ESQ., Bar #14279
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
Telephone:	702.862.8800
Fax No.:	702.862.8811
Email: wkrincek@littler.com
           kstegall@littler.com

Attorneys for Defendant
WYNN LAS VEGAS, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TIARE RAMIREZ, an individual;,

       Plaintiff,

vs.

WYNN LAS VEGAS, LLC; DOES I through X; and ROE Corporations XI through XX, inclusive;,

       Defendant.

Case No. 2:19-cv-01174-APG-BNW

**JOINT PRETRIAL ORDER**

After pretrial proceedings in this case,

IT IS ORDERED:

**I.**

**NATURE OF ACTION AND RELIEF SOUGHT**

This is an action for civil damages brought by Plaintiff Tiare Ramirez ("Plaintiff"), under the FMLA, ADA, NRS 613.330, NRS 613.340 and common law against Defendant Wynn Las Vegas, LLC (hereinafter "WLV" or "Defendant").

Consistent with this Court's Order granting in part and denying in part Defendant's Motion for Summary Judgment, the claims proceeding to trial are: FMLA Interference; Disparate Treatment under the ADA and analogous Nevada law; Retaliation under the ADA and analogous Nevada law; and

Negligent Hiring, Training and Supervision.  (*See* ECF No. 77).

## CONTENTION OF PARTIES

**PLAINTIFF'S CONTENTIONS**

Defendant Wynn Las Vegas wrongfully terminated a founding Wynn cocktail server, single mother, and committed employee Tiare Ramirez. Defendant's errant suspension of Plaintiff and its doubling-down despite readily available exculpatory evidence revealing she properly utilized protected FMLA leave when she experienced a flare up of her serious medical condition. Instead of admitting its mistake, instead of seeking clarification, and instead of following the law, Wynn terminated the 10-year employee for alleged "willful misconduct, dishonesty, and misuse of FMLA/ADA." As confirmed by this Court's ruling on Defendant's Motion for Summary Judgment (ECF No. 77), Plaintiff maintains claim against Defendant for FMLA Interference, ADA & NRS § 613.330 disparate treatment, ADA & NRS § 613.340 retaliation, and negligent hiring, training, and supervision. Plaintiff seeks all available relief under our law including but not limited to lost wages, compensatory damages, emotional distress damages, liquidated damages, punitive damages, injunctive relief, equitable relief, reinstatement with seniority, expungement of negative information in personnel file, declaratory relief, costs, and attorneys' fees.

**DEFENDANT'S CONTENTIONS**

WLV denies the allegations in their entirety and Plaintiff's version of the facts.  Specifically, WLV denies that it violated the FMLA because WLV did not interfere with any of Plaintiff's FMLA leaves.  WLV conducted a good faith investigation determining that Plaintiff misused her FMLA leave, resulting in her termination solely based on her misuse. Moreover, WLV denies that it violated the ADA because Plaintiff is not disabled within the meaning of the ADA, Plaintiff is not a qualified individual with a disability, and Plaintiff was not terminated because of her alleged disability. Similarly, WLV did not retaliate against Plaintiff due to her alleged disability. WLV also adequately trains its employees on the FMLA and ADA policies, and because of this, WLV denies that it negligently hired, trained, and supervised its employees.

## II.

## STATEMENT OF JURISDICTION

Jurisdiction over Plaintiff's claims is proper pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. 24 § 12117(a) because the lawsuit asserts claims under federal law and seeks to recover damages under federal statutes. Supplemental jurisdiction over Plaintiff's Nevada state law claims is proper under 28 U.S.C. §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

## III.

## THE FOLLOWING FACTS ARE ADMITTED BY THE PARTIES AND REQUIRE NO PROOF

The parties have agreed to the following stipulated facts:

1. Defendant hired Plaintiff as a cocktail server – model on November 20, 2008.

2. Pursuant to Defendant's job summary for the cocktail server – model position, the cocktail server is responsible for providing quality guest service through the serving of beverages, food, and amenities in all areas of the resort, including restaurants, nightclubs, banquets, and the casino. Defendant's job summary also states that Defendant's cocktail servers are required to walk in shoes with heels of at least either one-and-three quarters of an inch, or two inches.

3. Under Defendant's attendance policy, employees accrue points for attendance infractions. WLV maintains a point-based attendance policy. The attendance policy provides that if an employee has attendance infractions, then the employee will incur various levels of attendance points. Approved leave, such as leave under the FMLA or other medical leave, does not accrue attendance points under Defendant's policies.

4. WLV maintained a leave policy that allowed eligible employees to use leave under the FMLA. WLV's Family and Medical Leave Policy provides that eligible employees may take FMLA leave for the employee's serious health condition that renders the employee incapable of performing the functions of her job.

5. Plaintiff acknowledged she received WLV's policy in 2009.

6. If an employee has worked for Defendant for one year and worked a minimum of 1250

1  hours in the past 12 months, the employee is permitted leave under the Family Medical Leave Act
2  ("FMLA").

3      7.    Tiare Ramirez was also entitled to leave under a Collective Bargaining Agreement. If
4  additional leave is needed, the employee may request an extension of leave under the ADA.

5      8.    Plaintiff had previously been approved for leaves of absence between 2009 and 2017.
6  Plaintiff's approved leave included intermittent leave under the FMLA which was supported by a
7  medical certification submitted to Defendant in June of 2016 completed by Plaintiff's doctor, Dr. Ted
8  Cohen. WLV approved Plaintiff's intermittent leave from June 3, 2016, through June 2, 2017.

9      9.    On March 21, 2017, Plaintiff attended a gender reveal party at Town Square before she
10  was scheduled to work at WLV that day. Coworkers attended the party as well.

11      10.    Plaintiff was scheduled to work at WLV from 5:30 p.m. to 1:30 a.m.

12      11.    Plaintiff wore heels at the gender reveal party prior to her shift that day.

13      12.    Plaintiff utilized FMLA that day to call out of her shift.

14      13.    Ian LaCuesta ("LaCuesta") was also in attendance at this gender reveal party and at the
15  second location thereafter.

16      14.    WLV's Assistant Director of Cocktail Services, Tia Gibson ("Gibson"), saw the picture
17  on Facebook.

18      15.    Senior Employee Relations Counselor Jeralynn Makaiwi ("Makaiwi") started an
19  investigation into Plaintiff's potential misuse of FMLA on March 22, 2017 and was the principal
20  investigator.

21      16.    WLV postponed its investigation due to Plaintiff being out on leave.

22      17.    On April 28, 2017, Defendant's Employee Relations Department received an additional
23  Medical Certification Form stating that Plaintiff's leave of absence needed to be extended until August
24  1, 2017, which was approved.

25      18.    On July 24, 2017, Defendant's Employee Relations Department received another form
26  stating that Plaintiff required an additional extension through September 1, 2017, which was also
27  approved.

28      19.    On September 1, 2017, Defendant's Employee Relations Department received

additional paperwork whereby Plaintiff's physician once again indicated she would need an additional extension of leave through December 29, 2017.

20.  Plaintiff had exhausted all of her leave under the FMLA and the CBA Section 13.01 on September 15, 2017.

21.  Plaintiff communicated with WLV's ADA Administrator to determine whether or not an extension of leave beyond September 15, 2017, could be approved as a reasonable accommodation under the ADA.

22.  On September 22, 2017, Plaintiff's request for an extension of leave was approved as leave under the ADA.

23.  On October 13, 2017, WLV's ADA Administrator received a Return to Duty/Medical Release stating Plaintiff could return to work without any restrictions effective October 14, 2017.

24.  Plaintiff returned to work on October 14, 2017, and was placed on unpaid Suspension Pending Investigation.

25.  On October 16, 2017, Makaiwi met with Plaintiff to discuss her FMLA call out on March 21, 2017.

26.  Defendant terminated Plaintiff on November 2, 2017.

27.  Defendant's stated reason for termination was "willful misconduct, dishonesty, and misuse of FMLA/ADA."

IV.

**THE FOLLOWING FACTS, THOUGH NOT ADMITTED, WILL NOT BE CONTESTED AT TRIAL BY EVIDENCE TO THE CONTRARY**

1.  None.

/ / /

/ / /

/ / /

5.

V.

**THE FOLLOWING ARE THE ISSUES OF FACT TO BE TRIED AND DETERMINED AT TRIAL.[1]**

**PLAINTIFF'S PROPOSED ISSUES OF FACT**

1. Any findings of fact determined the Court in its August 29, 2022 Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment and Denying as Moot Defendant's Motion to Strike (ECF No. 77) which Defendant has not stipulated to herein.

2. Whether a picture of Plaintiff and other attendees of the gender reveal party was taken at 4:06 PM on March 21, 2017.

3. Whether the picture taken of Plaintiff and other attendees of the gender reveal party was posted to Facebook at 6:42 PM on March 21, 2017.

4. Whether after attending the gender reveal party, Plaintiff walked to her car and called WLV to use her intermittent FMLA leave on an unpaid basis.

5. Whether after calling out for FMLA intermittent leave Plaintiff went to a second location to eat food and take her pain medication.

6. Whether Plaintiff gets paid when she calls out for her shift and utilizes FMLA leave.

7. Whether Gibson had knowledge of the picture on Facebook and sent it to Makaiwi.

8. Whether anyone from WLV gave Makaiwi any practice or advise on the specific way that she conducted investigations.

9. Whether Makaiwi is aware of any specific FMLA guidelines on how employers conduct investigations.

10. Whether Makaiwi asked Plaintiff where she went after the gender reveal party and thus Plaintiff did not inform tell Makaiwi that she went to the second location to eat food in order to be able to take her medication thereafter the gender reveal party.

11. Whether later on the evening of October 16, 2017, the host of the gender reveal party

---

[1] Should the attorneys or parties be unable to agree on the statement of issues of fact, the joint pretrial order should include separate statements of issues of fact to be tried and determined upon trial.

emailed Makaiwi and stated that everyone left the gender reveal party by 4:00 p.m., including Plaintiff.

12. Whether on October 19, 2017, Makaiwi received an email from Dr. Cohen, Plaintiff's physician.

13. Whether Makaiwi reached out to Dr. Cohen during the investigation.

14. Whether Makaiwi reached out to Plaintiff's spouse, father of her children, and WLV coworker Mr. Ramirez during the investigation.

15. Whether Makaiwi could request statements from a statement from someboy outside of Wynn but did not.

16. WLV ever provided Makaiwi with any guidance on what she could ask a doctor during an FMLA investigation.

17. Whether Gibson recommended Ramirez be terminated for willful misconduct and dishonesty.

18. Whether Gibson did not receive training or instruction on what constitutes willful misconduct.

19. Whether Prior to her termination, Plaintiff had been a cocktail server for Defendant for almost ten years and had the requisite experience.

**WLV'S PROPOSED ISSUES OF FACT**

1. Whether Plaintiff's leave under the FMLA was medically necessary.

2. Whether Plaintiff was able to perform her job when she took FMLA leave.

3. Whether Plaintiff had a chronic ankle condition.

4. Whether Plaintiff still has a chronic ankle condition.

5. Whether Plaintiff still experiences flare-ups.

6. Whether Plaintiff experienced a flare-up on March 21, 2017.

7. Whether Plaintiff typically stays home when she has flare-ups.

8. Whether Plaintiff abused/misused her FMLA leave on March 21, 2017.

9. Whether the gender reveal party at the Blue Martini ended at or around 4:00 p.m.

10. Whether Plaintiff walked to her car from the Blue Martini in her heels.

11. Whether Plaintiff called off from work in her car in the Town Square parking lot.

12. Whether Plaintiff changed her shoes while at Town Square on the night of March 21, 2017.

13. Whether Plaintiff returned to GameWorks from her car after calling off from work.

14. Whether Plaintiff utilized her FMLA to avoid another attendance infraction and potential termination.

15. What time Plaintiff left Town Square on March 21, 2017?

16. Whether Plaintiff had an internal derangement of her right knee.

17. Whether Plaintiff's wearing of brand new high heels to the gender reveal party was in contravention of Plaintiff's doctor's orders.

18. Whether Plaintiff intended to play games at GameWorks while there.

19. Whether Plaintiff's husband got into an altercation with other guests while at GameWorks.

20. Why Plaintiff omitted that she went to GameWorks during her interview as a part of the investigation into her misuse of FMLA?

21. Whether Plaintiff communicated to her doctor that she needed a doctor's note stating that she was allowed to wear high heels.

22. Whether Dr. Cohen would determine that Plaintiff's high heels worn on March 21, 2017, were in contravention of his orders.

23. Whether WLV's good faith belief of Plaintiff's misuse of her FMLA refutes her FMLA allegations.

24. Whether Plaintiff's ankle condition substantially limits her ability to walk, stand, or work.

25. Whether Plaintiff could perform the essential functions of her position with or without a reasonable accommodation.

26. Whether Plaintiff engaged in any protected activity.

27. Whether Plaintiff still works in high heels.

28. Whether Plaintiff has FMLA leave at her jobs after WLV to the present for chronic ankle flare-ups.

29. Whether Plaintiff has ADA accommodations at her jobs after WLV to the present for chronic ankle flare-ups.

VI.

**THE FOLLOWING ARE THE ISSUES OF LAW TO BE TRIED AND DETERMINED AT TRIAL.[2]**

**PLAINTIFF'S ISSUES OF LAW**

1. Whether WLV's given reason for termination was pretextual for discrimination on the basis of disability.

2. Whether WLV's conduct, including termination of Plaintiff, resulted in Defendant engaging in activity that chilled the exercise of Plaintiff's rights, caused interference, caused harassment, retaliated against Plaintiff for exercising her rights under the FMLA, and/or discriminated against Plaintiff in violation of the FMLA, 29 U.S.C. § 2615 *et seq*.

3. Whether WLV's conduct and termination of Plaintiff was motivated by the exercise of Plaintiff's rights under the FMLA.

4. Whether WLV interfered with, restrained, and/or denied the exercise of and/or the attempt to exercise Plaintiff's rights under the FMLA.

5. Whether Plaintiff was discriminated against and ultimately terminated based upon her actual disability and/or her perceived disability by Defendant in violation of the ADA.

6. Whether WLV is in violation of the Americans with Disabilities Act in that Defendant discriminated and harassed Plaintiff on the basis of her impairment, failed to offer Plaintiff a reasonable accommodation, failed to engage in the interactive process with Plaintiff, and/or discriminated against Plaintiff.

7. Whether WLV retaliated against Plaintiff for engaging in protected activity.

8. Whether WLV had a duty of reasonable care to protect Plaintiff from the negligent and/or careless actions of its own agents, officers, employees and others.

9. Whether WLV's actions were done willfully and intentionally and in reckless disregard for

---

[2] Should the attorneys or parties be unable to agree on the statement of law, the joint pretrial order should include separate statements of issues of law to be tried and determined upon trial.

9.

Plaintiff's protected rights under state and federal law.

10. Whether WLV owed a duty to Plaintiff to not hire individuals with a propensity towards committing unlawful acts against Plaintiff.

11. Whether WLV owed a duty to Plaintiff to adequately train and supervise its employees in regard to all correct policies and procedures relating to discrimination on the basis of disability, retaliation, and/or termination policies and procedures.

12. Whether WLV breached its duty to protect Plaintiff by failing to properly hire, train, and/or supervise its employees, whereby a reasonable person could have foreseen the injuries of the type Plaintiff suffered would likely occur under the circumstances.

13. Whether as a direct and proximate result of the conduct of WLV, Plaintiff has sustained damages.

14. Plaintiff's entitlement to damages and the amounts of any.

15. Plaintiff's entitlement to punitive damages and the amounts of any.

16. Plaintiff's entitlement to liquidated damages and the amounts of any.

17. Plaintiff's entitlement to an offset for any resulting prejudicial tax consequences.

18. Plaintiff's entitlement to injunctive relief.

19. Plaintiff's entitlement to prejudgment interest.

20. Plaintiff's entitlement to an award of attorneys' fees and costs and the amounts thereof.

Plaintiff reserves the right to challenge, argue, and/or contest Defendant's contentions through jury instructions and/or motions in limine. Further, Plaintiff objects to any legal or factual issues that were not raised in Defendant's answer or affirmative defenses and are, therefore, waived under Fed.R.Civ.P. 8(c)(1).

**WLV'S ISSUES OF LAW[3]**

1. Whether Plaintiff had a condition covered by the FMLA.

2. Whether Plaintiff's condition was a "serious health condition" as defined by the FMLA.

---

[3] The parties respectfully request that any failure to "unerringly distinguish" between issues of fact and law due to the "vexing nature of the distinction between questions of fact and questions of law," be treated as corresponding questions of fact and questions of law. *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982).

3. Whether WLV interfered with Plaintiff's FMLA leave by terminating Plaintiff after she returned from her leave due to her misuse of her FMLA leave and after conducting a good-faith investigation into her misuse.

4. Whether WLV used the taking and utilization of FMLA as a negative factor in the decision to terminate Plaintiff for Plaintiff's misuse of her FMLA leave.

5. Whether Plaintiff has a physical impairment under the ADA.

6. Whether Plaintiff's chronic ankle condition substantially limits Plaintiff's major life activities.

7. Whether Plaintiff was a qualified individual under the ADA.

8. Whether Plaintiff's termination due to her misuse of FMLA was because of her alleged disability.

9. Whether Plaintiff is only entitled to equitable relief under her ADA retaliation claim, and therefore, whether this claim should not proceed to a jury trial.

10. Whether WLV owed Plaintiff a duty of care.

11. Whether WLV breached the duty by hiring, retaining, and/or supervising an employee even though WLV knew, or should have known, of the employee's dangerous propensities.

12. Whether the breach was the cause of Plaintiff's injuries

13. Whether Plaintiff was damaged by this breach.

14. Whether Plaintiff failed to mitigate her damages.

## VII.

**(a)    The parties reserve objections regarding these exhibits for trial:**

**(1) Plaintiff's proposed exhibits:**[4]

1. Ramirez's November 1, 2017 email, Bates numbered Ramirez 031.

2. Ramirez's November 2, 2017 email, Bates numbered Ramirez 092.

3. WLV Social Media policy, Bates numbered Wynn 0773-777.

4. October 16, 2017 email from Blue Martini employee, Bates numbered Ramirez 030.

---

[4] Plaintiff has Exhibits numbers 1 – 500 and Defendants have Exhibit numbers 501 – 1000.

5. Dr. Ted Cohen's October 19, 2017 email, Bates numbered Ramirez 104.

6. Photograph, Bates numbered Ramirez 095.

7. Ramirez's FMLA paperwork, Bates numbered Ramirez 099-103.

8. WLV's Responses to Plaintiff's First Set of Interrogatories.

9. WLV's Responses to Plaintiff's First Set of Requests to Admit.

10. WLV's Responses to Plaintiff's First Set of Requests to Produce.

11. Potentially all exhibits proposed by Defendant to which Plaintiff does not object prior to trial.

Plaintiff reserves the right to use, rely, or supplement this list with additional documents, evidence, and exhibits discovered, disclosed, or produced by the parties during the course of litigation deemed necessary for rebuttal or impeachment at trial, and the parties' respective pleadings and discovery responses as well.

### (2) Defendant's proposed exhibits:

501. WLV's Relevant Policies, Bates numbered WYNN000538–540, WYNN000591–595, WYNN000597, WYNN000610–621, WYNN000629–631, WYNN000635–651, WYNN000669–675, WYNN000678–681, WYNN000686, WYNN000700–701, WYNN000705–707, WYNN000722–725, WYNN000730–732, WYNN000762–764, WYNN000765–769, and WYNN000770–772.

502. WLV's Code of Conduct, Bates numbered WYNN000736–752.

503. Food & Beverage SOP Manual 2019, Bates numbered WYNN000782, WYNN000791, WYNN000797, WYNN000799–801, WYNN000834–835, and WYNN000848.

504. Performance Management PowerPoint, Bates numbered WYNN000991–1039.

505. WLV Shoe Memorandum revised January 6, 2017, Bates numbered WYNN001273–1274.

506. Plaintiff's Work Summary, Bates numbered WYNN000001–7.

507. Plaintiff's Job Description, Bates numbered WYNN000040–43 and WYNN000106–110.

508. Plaintiff's Personnel Documents, Bates numbered WYNN000032–37, WYNN000039,

and WYNN00044–68.

509. Plaintiff's Counseling Notices, Bates numbered WYNN000020–31.

510. Plaintiff's FMLA Certification, Bates numbered WYNN000011–15.

511. Plaintiff's FMLA Approval, Bates numbered Ramirez028.

512. February 2017 Collective Bargaining Agreement, Bates numbered WYNN000431–537.

513. March 21, 2017 Gender Reveal Party Colored Photograph, Bates numbered WYNN001400.

514. March 22, 2017 LaCuesta Statement, Bates numbered WYNN000018.

515. Correspondence related to the investigation into Plaintiff's FMLA misuse, Bates numbered WYNN000069–71, WYNN000129–131, WYNN000143, and WYNN001275–1397.

516. Documents related to Plaintiff's 2017 leave, Bates numbered WYNN000073–103 and WYNN000113.

517. September 2017 ADA Leave Notes, Bates numbered WYNN000114–115.

518. October 13, 2017 Return to Duty/Medical Release, Bates numbered WYNN000072.

519. October 14, 2017 Counseling Notice regarding suspension pending investigation, Bates numbered WYNN000010.

520. October 16, 2017 Plaintiff's Statement, Bates numbered WYNN000017.

521. Plaintiff's Bank Statement provided during Investigation, Bates numbered Ramirez097–98.

522. Plaintiff's Termination Recommendation, Bates numbered WYNN001270.

523. Plaintiff's Termination PAN Summary, Bates numbered WYNN000008–9.

524. Plaintiff's Signed Termination PAN, Bates numbered WYNN000019.

525. Plaintiff's Union Grievance Records, Bates numbered WYNN000116–122, WYNN000124–125, and WYNN000140–141.

526. Plaintiff's WLV Earnings, Bates numbered WYNN000145–199.

527. Plaintiff's WLV Punch Detail History, Bates numbered WYNN000200–283.

528. Makaiwi's Handwritten Notes related to Plaintiff, Bates numbered WYNN001398–

1399.

529.   Plaintiff's Unemployment Records, Bates numbered Ramirez001–4 and Ramirez034–58.

530.   Documents related to Plaintiff's Employment at Caesars, Bates numbered WYNN001040–1041 and WYNN001044–1046.

531.   Plaintiff's Paystubs at Caesars, Bates numbered WYNN001048–1084.

532.   Plaintiff's Employment Documents with Able Baker, Bates numbered WYNN001128–1137.

533.   March 2, 2018 Charge of Discrimination, Bates numbered WYNN000284.

534.   WLV's June 18, 2018 Position Statement, Bates numbered WYNN000288–357.

535.   March 28, 2019 Notice of Right to Sue, Bates numbered WYNN000285–287.

536.   EEOC FOIA File, Bates numbered WYNN000358–430.

537.   Relevant Documents produced by Dr. Ted Cohen, Bates numbered WYNN001087, WYNN001089, WYNN001092, WYNN001094–1104, WYNN001107–1119, and WYNN001123–1126.

538.   Plaintiff's Divorce Documents, Bates numbered WYNN001138–1269.

539.   Plaintiff's Tax Statements, Bates numbered Ramirez061–66, Ramirez069–70, Ramirez072, Ramirez075–88, and Ramirez115–117.

Defendant reserves the right to use, rely, or supplement this list with additional documents, evidence, and exhibits discovered, disclosed, or produced by the parties during the course of litigation deemed necessary for rebuttal or impeachment at trial, and the parties' respective pleadings and discovery responses as well.

**(b)   Electronic evidence:**

Electronic evidence is addressed in the Section above.  The parties reserve all rights to present or object to evidence in electronic form where applicable, including, but not limited to, audio and visual recordings.

**(c)   Depositions:**

(1) Plaintiff will offer the following depositions:

At this time, Plaintiff understands that the relevant deponents are available for trial, and therefore, their deposition testimony will not be required in their absence due to their unavailability. If a witness unexpectedly becomes unavailable before trial, then Plaintiff will be promptly notified, and with respect to such witness, specific pages and lines of their deposition testimony will be promptly designated, and any other objections or counter-designations will then be timely made in response.

(2) <u>WLV will offer the following depositions:</u>

Chrystian Ramirez due to Plaintiff's counsel's representation that this witness is deceased.

At this time, WLV understands that the remaining relevant deponents are available for trial, and therefore, their deposition testimony will not be required in their absence due to their unavailability. If a witness unexpectedly becomes unavailable before trial, then Plaintiff will be promptly notified, and with respect to such witness, specific pages and lines of their deposition testimony will be promptly designated, and any other objections or counter-designations will then be timely made in response.

**(d)     Objections to depositions:**

The parties will file any objections within 14 days of the other party designating the exact deposition testimony to be offered for any unavailable witnesses. The parties further reserve the right to object to irrelevant or otherwise objectionable portions of any transcript of deposition testimony offered by a party at trial.

**VIII.**

**THE FOLLOWING WITNESSES MAY BE CALLED BY THE PARTIES AT TRIAL:**

**(a) Provide names and addresses of Plaintiff's witnesses.**

Please see **Exhibit A** to the Joint Pretrial Order. Plaintiff reserves the right to call impeachment witnesses and rebuttal witnesses as needed. Plaintiff reserves the right to call any person necessary to authenticate any of the possible exhibits listed herein.

**(b) Provide names and addresses of Defendant's witnesses.**

Please see **Exhibit B** to the Joint Pretrial Order. WLV reserves the right to call impeachment witnesses and rebuttal witnesses as needed. WLV reserves the right to call any person necessary to authenticate any of the possible exhibits listed herein.

/ / /

**(c) Objections to witnesses:**

    **(1) Plaintiff's objections to witnesses:**

1. Plaintiff reserves any remaining objections to witnesses for motions in limine and/or trial.

    **(2) WLV's objections to witnesses:**

1. WLV reserves any objections to witnesses for motions in limine and/or trial.

## IX.

The attorneys or parties have met and jointly offer these three trial dates, with the understanding that the Court may very well set the trial date at a later time given the current challenges to scheduling jury trials in the midst of the current pandemic:

<u>November 6, 2023</u>    <u>December 4, 2023</u>    <u>December 11, 2023</u>

It is expressly understood by the undersigned that the court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the court's calendar.

## X.

It is estimated that the trial will take a total of 5 days.

APPROVED AS TO FORM AND CONTENT

/s/ Kaine Messer  
CHRISTIAN J. GABROY  
KAINE MESSER  
GABROY | MESSER

*Attorney for Plaintiff Tiare Ramirez*

/s/ Kelsey E. Stegall  
WENDY M. KRINCEK  
KELSEY E. STEGALL  
LITTLER MENDELSON P.C.

*Attorneys for Defendant Wynn Las Vegas, LLC*

## XI.

## ACTION BY THE COURT

This case is set for jury trial on the fixed/stacked calendar on _____.
Calendar call will be held on _____ in Courtroom _____.

This pretrial Order has been approved by the parties to this action as evidenced by their signatures or the signatures of their attorneys hereon, and the order is hereby entered and will govern the trial of this case. This order may not be amended except by court order and based upon the parties' agreement or to prevent manifest injustice.

DATED: _____.

_____
UNITED STATES DISTRICT JUDGE