PATRICK H. HICKS, ESQ.
Bar No. 4632
WENDY MEDURA KRINCEK, ESQ.
Bar No. 6417
KELSEY E. STEGALL, ESQ.
Bar No. 14279
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
Telephone:  702.862.8800
Fax No.:    702.862.8811
Email: phicks@littler.com
Email: wkrincek@littler.com
Email: kstegall@littler.com

Attorneys for Defendant
WYNN LAS VEGAS, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TIARE RAMIREZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WYNN LAS VEGAS, LLC; DOES I through X; and ROE Corporations XI through XX, inclusive,<br><br>Defendant. | Case No. 2:19-cv-01174-APG-EJY<br><br>**DEFENDANT WYNN LAS VEGAS, LLC'S MOTION FOR REMITTITUR (FRCP 59) AND MOTION FOR SANCTIONS (FRCP 37)** |

Defendant Wynn Las Vegas, LLC ("Defendant") moves for two avenues of relief: (1) a motion for remittitur of the jury verdict's award of $321,200.00 to $10,927.77 and (2) a motion for sanctions for Plaintiff's failure to disclose lost benefits including, but not limited to, a calculation of damages for such lost benefits pursuant to Federal Rule of Civil Procedure 26(a)(1).

First, pursuant to Federal Rule of Civil Procedure 59, Defendant hereby moves for remittitur of the jury's $321,200.00 verdict to $10,927.77. The jury's verdict clearly contradicts the evidence presented at trial and to award the full verdict amount would be a manifest injustice. Therefore, pursuant to Rule 59, the Court should grant Defendant's motion for remittitur, thereby requiring Plaintiff Tiare Ramirez ("Plaintiff") to either accept this amount or order a new trial solely limited to damages.

Second, pursuant to Federal Rule of Civil Procedure 37, Defendant hereby moves for the Court to sanction Plaintiff's counsel for his improper and unsupported request for damages for alleged lost benefits, which were never identified or sought during discovery and for which a calculation was never provided, all contrary to the initial disclosure requirements of Federal Rule of Civil Procedure 26(a)(1). Despite never having properly sought and provided a calculation of damages for alleged lost benefits, Plaintiff's counsel improperly asked for some unidentified benefits damages to be awarded during closing argument for which no evidentiary support had been elicited at trial. Defendant was prejudiced by this sanctionable conduct in the jury's three-hundred-thousand-dollar award including some amount attributable to the alleged damages for lost benefits, and the Court should therefore use its automatic and self-executing powers under Rule 37 to sanction Plaintiff for the blatant Rule 26 violations.

## I.     **DEFENDANT'S MOTION FOR REMITTITUR UNDER RULE 59**

### A.     INTRODUCTION

Math is math, and the law is the law. After five days of trial, despite ample evidence of Plaintiff's back pay and subsequent mitigation, despite specific jury instructions addressing the damages to which Plaintiff is entitled under the FMLA and how to calculate those damages, and despite no evidence to support any sort of damages available to Plaintiff outside of back pay, in relying on Plaintiff's counsel's incorrect math and misrepresentations during closing arguments, the jury incorrectly awarded Plaintiff $321,200.00 as damages for the FMLA interference claim.

However, math is math. The jury's calculation is neither supported by math nor the evidence presented with respect to Plaintiff's income at Wynn Las Vegas and through December 31, 2022. The jury instructions provided were crystal clear as to how to calculate any sort of back pay award. Despite this, the jury entirely disregarded them. The evidence presented at trial was crystal clear as to Plaintiff's weekly wages while working for Defendant—a figure undisputed by both parties—and the evidence was crystal clear as to Plaintiff's mitigation of her damages at her job at Caesars. Despite this, the jury disregarded them.

The law is the law. The FMLA is clear: if a jury finds in favor of a plaintiff on an FMLA interference claim, a jury can only award a plaintiff back pay—no emotional distress damages, no

punitive damages. *See* 29 U.S.C. § 2617. Despite this, the jury awarded $321,200.00 without any sort of evidentiary basis for such a figure.

Because of these clear errors, Defendant moves for remittitur of the jury's verdict to reduce it to the only number both the math and the law support: $10,977.20. This number is the only amount of back pay to which Plaintiff is entitled, and the only damages for which she can recover. Accordingly, and as discussed more thoroughly *infra*, Defendant requests that pursuant to Rule 59, the Court grant remittitur of the jury's excessive verdict.

### B.   RULE 59 LEGAL STANDARD

Following a jury trial, a court "may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A new trial may be granted "even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990); *see Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1093 (D. Mont. 2019), *aff'd*, 819 F. App'x 483 (9th Cir. 2020). "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict." *Goldstine v. FedEx Freight Inc.*, No. C18-1164 MJP, 2021 WL 952354, at *1 (W.D. Wash. Mar. 11, 2021). "[T]he district court can weigh the evidence and assess the credibility of the witnesses" and "may *sua sponte* raise its own concerns about the damages verdict." *Id.* "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e). There are four grounds upon which a Rule 59(e) motion may be granted: "1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner v. Burlington Northern Santa Fe Ry. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal

quotation marks, citation, and emphasis omitted). This Court exercises "considerable discretion when considering a motion to amend judgment under Rule 59(e)." *Id.*

With respect to damages, if the Court determines that damages are excessive, the Court "may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial [under Rule 59(a)] or of accepting a reduced amount of damage which the court considers justified [under Rule 59(e)]." *Bandary v. Delta Air Lines, Inc.*, 623 F. Supp. 3d 1071, 1075–76 (C.D. Cal. 2022); *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983). "If the prevailing party does not consent to the reduced amount, a new trial must be granted." *Fenner*, 716 F.2d at 603. "If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

**C.    ARGUMENT**

**1.    The Jury Verdict Award is Incorrect and in Clear Error, as the Evidence Demonstrated Plaintiff is Only Entitled to $10,927.77 in Lost Wages.**

Remittitur is available to correct excessive verdicts. *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins.*, 219 F.3d 895, 905 (9th Cir. 2000). If the court concludes that a damages award is excessive, it may either grant the defendant's motion for a new trial, or deny the motion, conditioned upon the prevailing party's acceptance of a remittitur. *Silver Sage Partners Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 818 (9th Cir. 2001). A trial court granting a motion for remittitur does not substitute its judgment for that of the jury, but instead reduces the judgment to the maximum amount sustainable by the proof. *D & A Redi–Mix v. Siena Redi–Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982).

Indeed, the Ninth Circuit confirmed this year that the Ninth Circuit can "set the remittitur amount where objective evidence clearly identified the correct damages amount." *Bell v. Williams*, 108 F.4th 809, 835 (9th Cir. 2024) (citing, *e.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1086–89 (9th Cir. 2022) (correcting the district court's remittitur calculation); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094–95 (9th Cir. 2014) (concluding that the district court selected the incorrect amount when setting the remittitur)). It therefore follows that the district court is expected to also set the remittitur amount where "objective evidence clearly identified the correct damages

amount." *Id.*

Here, without taking into account the evidence that had been introduced and provided to the jury, for the first time during closing arguments, Plaintiff's counsel requested $301,000.00 or $301,280.00 in damages under the FMLA. (*See* J. Trial Tr. Day 5 at 1026:7–18, 1088:14–23, ECF No. 164). Plaintiff's counsel did so under the guise of unmitigated back pay and some unidentified value of benefits that he believed Plaintiff was entitled to without any sort of evidentiary support. Despite the clear lack of support for such an assertion, the jury awarded Plaintiff $321,200.00 for her FMLA interference claim. The basis for this number is entirely unknown.

Indeed, the jury was provided no law and no evidence to support such an award. In addition to the lack of evidence, the FMLA itself does not support such a finding because the FMLA *strictly* limits the amount of damages a plaintiff can recover for a successful FMLA claim. The statute provides that a jury can only award "[d]amages equal to the amount of 'any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . . .'" 29 U.S.C. § 2617. This is included in the jury instruction titled, "FMLA INTERFERENCE—DAMAGES," (ECF No. 165 at p. 29). Notwithstanding this clear directive, the jury awarded Plaintiff more than what she was entitled to under the statute for both back pay and the unidentified benefits. Because of this, the Court should reduce the award.

        **a.**    *The Jury's Award of Back Pay is in Clear Error.*

Of the jury's $321,200.00 award, Plaintiff's counsel requested approximately $172,915.00 in back pay during closing arguments. This figure is far from accurate—the jury thus erred on both the math and the law in rendering such an award.

"Back pay damages are presumed and 'are determined by measuring the difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by [the] defendant.'" *White v. Oxarc, Inc.*, No. 1:19-CV-00485-CWD, 2022 WL 17668781, at *15 (D. Idaho Dec. 13, 2022), *appeal dismissed*, No. 23-35032, 2023 WL 2947441 (9th Cir. Mar. 21, 2023) (citing *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999)); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421–22 (1975); *Rightsell v. Concentric Healthcare Sols. LLC*, No. CV-19-04713-PHX-GMS, 2023 WL 6248536, at *1 (D. Ariz. Sept. 26,

5.

2023). Back pay "***must*** be reduced by the amount plaintiff could earn using reasonable mitigation efforts." *See Gressett v. Cent. Ariz. Water Conservation Dist.*, No. CV-12-00185-PHX-JAT, 2015 WL 1505774, at *4 (D. Ariz. Mar. 31, 2015) (emphasis added).

Courts have concluded that "[i]n FMLA cases, as in other employment discrimination cases, a plaintiff has a duty to reasonably mitigate damages." *See Stevens v. ACR Sales & Serv., Inc.*, No. 6:08-CV-421-ORL-31-KRS, 2009 WL 10670163, at *4 (M.D. Fla. Jan. 14, 2009), *report and recommendation adopted*, No. 6:08-CV-421-ORL-31-KRS, 2009 WL 10670065 (M.D. Fla. Feb. 4, 2009); *Knox v. Cessna Aircraft Co.*, Civil Action No. 4:05-CV-131(HL), 2007 WL 2874228, at * 11. (M.D. Ga., Sept. 26, 2007) (collecting cases). This means that it is necessary to subtract a plaintiff's subsequent earnings from her lost wages.[1] *See Stevens*, 2009 WL 10670163, at *4; *Newcomb v. Corinth Sch. Dist.*, No. 1:12-CV-00204-SA-DAS, 2015 WL 1505839, at *11 (N.D. Miss. Mar. 31, 2015). If a jury fails to do so, the Court should reduce the back pay award by deducting the plaintiff's subsequent earnings from her lost wages. *Stevens*, 2009 WL 10670163, at *4.

In *Stevens*, after a jury trial and a jury award of back pay in an FMLA case, the Court found that Stevens had partially mitigated his damages through subsequent employment. *Id.* Because the plaintiff had wages from subsequent employment, the Court found that it was proper to deduct Stevens's subsequent earnings from his lost wages, which the jury had failed to do. *Id.* (citing *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1471-72 (11th Cir. 1988) (finding that the district court erred in failing to deduct interim earnings from back pay award under Title VII)).

Similarly, in *Newcomb*, the court held in an FMLA case that "any wages Newcomb earned through his business during the back pay period should be subtracted from his award. The Fifth Circuit

---

[1] Plaintiff's counsel likely confused the jury in closing argument including when he incorrectly instructed the jury that it was Defendant's burden to prove mitigation, which is false. (*See* J. Trial Tr. Day 5 at 1087:13–18). There is a difference between a plaintiff's burden to mitigate her damages by finding new work and the affirmative defense that a defendant brings for a *failure* to mitigate. "A ***plaintiff*** has a ***duty to mitigate*** damages and ***cannot*** recover losses [she] could have avoided through reasonable efforts." *Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1184 (C.D. Cal. 2011) (emphasis added). This is the plaintiff's burden. On the other hand, "***Defendants*** bear the burden of establishing that Plaintiffs ***failed*** to mitigate." *Id.* (emphasis added). Plaintiff's counsel incorrectly instructed the jury to disregard Plaintiff's mitigation by claiming that Defendant needed to prove that she mitigated, which is not the case.

has held that, under the ADEA and Fair Labor Standards Act ("FLSA"), 'courts must offset lost wage awards with post-termination earnings.'" *Newcomb*, 2015 WL 1505839, at *11 (citing *Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006)). "Because the remedies available under the ADEA and the FMLA both track the FLSA, cases interpreting remedies under the statutes should be consistent." *Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006). Because of this, courts are required to offset interim earnings from an award of back pay in the FMLA context. *See Johnson*, 473 F.3d at 222; *Newcomb*, 2015 WL 1505839, at *11.

This is especially true when there is evidence in the record to not only support the back pay award, but to also support the offset of wages due to the plaintiff's mitigation through subsequent employment. *See Lane v. Grant Cnty.*, No. CV-11-309-RHW, 2013 WL 5306986, at *5 (E.D. Wash. Sept. 20, 2013), *aff'd*, 610 F. App'x 698 (9th Cir. 2015). In *Lane*, the court reduced the back pay award to what was in evidence because there was "nothing in the record to support the jury's verdict of back pay in the amount of $150,000." *Id.*

The same is true here. After five days of trial and during closing arguments, Plaintiff requested—for the first time—that she be awarded $172,915.00 in lost wages. (J. Trial Tr. Day 5 at 1025:16–22). Despite the inaccuracy of this amount, the jury appears to have awarded the full $172,915.00 and more to Plaintiff. However, there is no evidence to support this award or this amount.

In rendering such an amount, the jury disregarded Plaintiff's mitigation through subsequent employment, directly contrary to the Court's jury instruction and clear weight of evidence. Specifically, the jury instruction titled "DAMAGES—MITIGATION" expressly provided, "To calculate the amount of lost wages you must: 1. Determine the amount [Plaintiff] would have earned from [Defendant] from the date of her discharge through December 31, 2022; and 2. ***Subtract the amount [Plaintiff] earned*** or could have earned by returning to gainful employment. The resulting amount, if any, would be [Plaintiff's] damages for past lost earnings." (J. Inst. at p. 33, ECF No. 165) (emphasis added). Not only was the jury specifically instructed on this requirement, but when the jury asked a question related to mitigation, the jury was, once again, directed to read this instruction. (J. Trial Tr. Day 5 at 1102:10–1105:20). Notwithstanding this, the jury clearly disregarded the instruction in its entirety when it finally rendered its verdict after 5 p.m. on Friday, October 25th.

In addition to the jury instruction provided, the jury was provided Plaintiff's wage records through her tax documents and W2s from 2016 through 2022 in exhibit 539 and 540. *See* Trial Exs. 539, 540 attached hereto as <u>Exhibit 1</u>. Moreover, the jury was provided Plaintiff's subsequent earnings at Caesars and Able Baker through her W2s and through wage records from both of these locations. *See id.*; *see* Trial Ex. 532 attached hereto as <u>Exhibit 2</u>. Pursuant to these exhibits, it is undisputed that Plaintiff's earnings are as follows:

| YEAR | SOURCE | $ AMOUNT | CITATION |
|---|---|---|---|
| 2016 | DEFENDANT | 33,426 | RAMIREZ61, EX. 539 |
| 2017[2] | DEFENDANT | 10,439 | RAMIREZ75, EX. 539 |
| 2018 | CAESARS | 33,213.93 | RAMIREZ115, EX. 539 |
|  | UNEMPLOYMENT ("UE") | 10,385 | RAMIREZ130, EX. 540 |
|  | **TOTAL COMPENSATION** | **43,598.93** |  |
| 2019 | CAESARS | 40,058.12 | RAMIREZ117, EX. 539 |
|  | CAESARS UE | 1,089 | RAMIREZ131, EX. 540 |
|  | ABLE BAKER | 2,324.75 | EX. 532 |
|  | **TOTAL COMPENSATION** | **43,471.87** |  |
| 2020 | CAESARS | 20,504.56 | RAMIREZ126, EX. 540 |
|  | CAESARS UE | 13,550 | RAMIREZ132, EX. 540 |
|  | ABLE BAKER | 2,744.27 | EX. 532 |
|  | **TOTAL COMPENSATION** | **36,798.83** |  |
| 2021 | CAESARS | 82,281.61 | RAMIREZ127, EX. 540 |
|  | CAESARS UE | 10,975 | RAMIREZ133, EX. 540 |
|  | **TOTAL COMPENSATION** | **93,256.61** |  |
| 2022 | CAESARS | 53,689.92 | RAMIREZ128, EX. 540 |
|  | CAESARS UE | 9,986 | RAMIREZ134, EX. 540 |
|  | **TOTAL COMPENSATION** | **63,675.92** |  |

This is simple math. These figures were not disputed and no evidence to the contrary was presented at trial. The chart is constructed from taking totals from the referenced exhibits and then adding them together if there are multiple sources of income for the year—no complicated calculation. All it requires is an actual analysis of the documents in evidence to determine what her wages and income were for each year. As presented to the jury in Defendant's closing argument, her total earnings can be summarized as follows:

| YEAR | $ AMOUNT |
|---|---|
| 2018 | 41,282.93 |
| 2019 | 43,471.87 |
| 2020 | 36,798.83 |
| 2021 | 93,256.61 |
| 2022 | 63,675.92 |

---

[2] Plaintiff's 2017 unemployment from Defendant for approximately 2 months is not included in this calculation. That amount is $2,370. *See* <u>Ex. 1</u>.

In looking at these tables, Plaintiff made more *every single year* after leaving her employment with Defendant than she made her last full year of employment with Defendant. Plaintiff testified to all of this at trial as well. (J. Trial Tr. Day 3, P.M. Session at 735:6–742:7, ECF No. 157). Because of this, Plaintiff's lost wages should be offset from the first day of her employment with Caesars, which was February 10, 2018. Trial Ex. 530 attached hereto as Exhibit 3.

Accordingly, Plaintiff is only entitled to lost wages from October 14, 2017—the date she was placed on unpaid suspension—to February 10, 2018. This is a total of 17 weeks. Both parties' counsel represented to the jury at closing that Plaintiff made $642.81 a week pursuant to her last full year of work with Defendant in 2016, and this amount is therefore undisputed.[3] (*Compare* J. Trial Tr. Day 5 at 1025:16–22 *with* 1075:16–21). Therefore, $642.81 multiplied by 17 equals ***$10,927.77***. That is the ***total*** amount of lost wages to which Plaintiff is entitled, and the amount explained to the jury during Defendant's closing argument. (J. Trial Tr. Day 5 at 1075:16–21). Nothing more, nothing less. Notwithstanding this, the jury disregard the math and the law and accepted Plaintiff's miscalculations and misrepresentations as true.

Plaintiff did not dispute her mitigation at trial, and she did not dispute this prior to trial either. In Plaintiff's verified interrogatory answers served on November 1, 2019, Plaintiff *expressly concedes* that she is not entitled to any lost wages after she started her position at Caesars. See Exhibit 4, Plaintiff's Interrogatory Answers. Specifically, Plaintiff attested that she was entitled to lost wages in the total amount of ***$13,498.95***.[4] *Id*. She testified to this number because she once again conceded that her damages are offset by her employment at Caesars. *See id.* While this number still differs slightly, it is *much* closer to the $10,927.77 amount than the $301,000.00 amount that Plaintiff suddenly and improperly requested for the first time during closing arguments at trial.

Plaintiff's initial disclosures further establish that the jury's damage award was excessive, contrary to the evidence at trial. In each and every one of her disclosures leading up to trial, Plaintiff

---

[3] While undisputed, this is calculated by taking the $33,426 in wages Plaintiff earned in 2016, *see* Ex. 1 at RAMIREZ61) and dividing it by 52 for the number of weeks in a year.

[4] While Plaintiff's counsel's disclosures represent other amounts as discussed *infra*, this $13,498.95 figure is the ***only*** lost wages amount that was verified by Plaintiff under oath.

9.

conceded that her lost wages were mitigated by her new employment, and each of Plaintiff's disclosures requested lost wages in an amount far less than the amount she requested at trial. *See* Exhibit 5, Plaintiff's Five Disclosures. Specifically, each of Plaintiff's disclosures provide as follows:

| *Disclosure* | *Date* | **Lost Wages** |
|---|---|---|
| Initial Disclosures | September 9, 2019 | $72,929.45 |
| First Supplemental | November 1, 2019 | $13,927.50 |
| Second Supplemental | October 26, 2021 | $133,520.34 |
| Third Supplemental | October 29, 2021 | $133,795.83 |
| Fourth Supplemental | August 23, 2024 | $110,140.39[5] |

Not only do these numbers (and their fluctuation) demonstrate how inconsistent Plaintiff and her counsel are about their own calculation of her lost wages, but they also demonstrate that every single amount—including an amount disclosed on the eve of trial—was hundreds of thousands of dollars *less* than what Plaintiff asked for at closing argument.[6]

Nevertheless, math is math. Based on the uncontradicted evidence presented at trial and as discussed *supra*, it is undisputed that the jury's FMLA award is in clear error and is excessive. Therefore, the verdict must be reduced in order to avoid such an unjust award unsupported by either law or evidence. The Court should therefore grant Defendant's remittitur request. If Plaintiff chooses not to accept the remittitur, then Defendant respectfully requests that the Court order a new trial solely on damages to reduce the back pay judgment to the maximum amount sustainable by the math and the law provided at trial—$10,927.77. The law is the law, and Plaintiff is only entitled to this amount for her lost wages under the FMLA.

---

[5] Notably, this late disclosure included a calculation of lost wages through the date it was served, August 23, 2024, and not through December 31, 2022. Because of this, this figure would be substantially lower given that two years would be subtracted from the amount.

[6] If Plaintiff is going to argue that the inflated calculation to the jury is accurate, then every single other calculation that was provided in her disclosures is in violation of Rule 26 and also subject to sanctions pursuant to Rule 37 as discussed *infra*. Moreover, such an argument would be independent grounds for a new trial on damages pursuant to Rule 59(a).

### b. *Plaintiff's Counsel's Request for an Award Based on Plaintiff's Benefits was Not Supported by Any Evidence, and The Jury's Award Appearing to Include Such an Award is in Clear Error.*

Of the jury's $321,200.00 award, Plaintiff requested at closing arguments an additional award to be provided for some unidentified lost benefits. However, this request was improper, as Plaintiff failed to present *any* evidence regarding any actual damages from any alleged lost benefits arising from the termination of her employment with Defendant, and her failure to do so is fatal and in clear error of the law. Plaintiff did not present such evidence because that evidence does not exist in the record—Plaintiff had never requested damages for lost benefits as a form of relief prior to trial, and because of this, no discovery was ever completed on it, and as further discussed *infra*, no claim or calculation of damages for alleged lost benefits was disclosed by Plaintiff.

The Ninth Circuit holds that to measure a monetary award of lost benefits including insurance benefits, the "proper measure" is "the amount of any ***actual expenses*** incurred" by the employee. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1517 (9th Cir. 1986) (emphasis added). According to the *Galindo* court, "lost insurance coverage, unless replaced or unless actual expenses are incurred, is simply ***not a monetary benefit owing to the plaintiff***." *Id.* (emphasis added). Therefore, for a jury to award monetary damages for insurance or other alleged lost benefits, out-of-pocket, actual expenses *must* be in evidence so that the jury can calculate an award of such benefits. *See E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 902 (9th Cir. 1994) (remanding to the district court a damages award that must be calculated on out-of-pocket expenses pursuant to *Galindo*). If actual expenses are not provided, a plaintiff is not entitled to recover such a remedy. *Id.*

District courts in the Ninth Circuit also consistently find that if there is no evidence of actual expenses related to insurance benefits after a termination, then a plaintiff is not entitled to such relief. *See, e.g.*, *Staton v. City & Cnty. of Butte-Silver Bow*, No. CV-20-60-BU-BMM, 2023 WL 8258102, at *8 (D. Mont. Nov. 29, 2023) (granting in an FMLA case an employer's motion to preclude the plaintiff from presenting evidence of damages for insurance premiums that the employer would have paid on plaintiff's behalf in holding that the plaintiff "remains limited to presenting evidence of ***actual expenses*** that she incurred to procure health or life insurance benefits") (emphasis added); *Bell v. VF Jeanswear LP*, No. CV-14-01916-PHX-JJT, 2018 WL 1034952, at *11 (D. Ariz. Feb. 23, 2018), *aff'd*,

11.

1  819 F. App'x 531 (9th Cir. 2020) (refusing to include as part of the award an amount for the loss of
2  insurance-related amounts where the plaintiff "presented no evidence of life insurance premiums,
3  health insurance premiums, or specific costs or medical care paid after her resignation").

4  Here, it is indisputable that there is *no* evidence to support an award for damages for lost
5  benefits of any sort including any arising from the loss of insurance benefits. At trial, the only evidence
6  related to benefits was Plaintiff's testimony that when she was terminated, she lost her insurance.[7] (J.
7  Trial Tr. Day 3, P.M. Session at 671:11–25). That is it. Plaintiff neither presented any evidence
8  regarding any out-of-pocket expenses nor did she present any evidence regarding her actual expenses
9  she incurred to cover such benefits. There was no evidence as to what she did once she lost her
10 insurance, and there was no evidence as to the cost, if any, she expended due to this. This is entirely
11 insufficient to support a request for damages based on her benefits, let alone a calculation and award
12 of them.

13 The fact that there was no evidence at trial to support such a finding is bolstered by the fact
14 that there was *no* discovery done on benefits damages because Plaintiff and her counsel *never*
15 requested such relief during the five years that this case was pending prior to trial. This is demonstrated
16 by Plaintiff's Complaint, (ECF No. 1-3), Plaintiff's interrogatory answers, *see* Exhibit 4, and
17 Plaintiff's disclosures that were timely served, *see* Exhibit 5. Nowhere in any of Plaintiff's documents
18 does she indicate or request such a remedy, thereby precluding her from doing so at trial. Rather, prior
19 to trial, the only time benefits were even mentioned was in Plaintiff's last-minute, three-years-too-late
20 disclosure that she served on the eve of trial, well outside the discovery deadline, and phrased in a
21 manner that is not even clear what she is claiming. *See* Exhibit 5. In Plaintiff's August 23, 2024
22 disclosure, Plaintiff included a conclusory unclear reference to "anticipated benefits"—that is, only
23 saying that she is entitled to "all such anticipated benefits"—without including the mandatory
24 calculation or computation required of her. Not only is this uncompliant with Rule 26, but also it is

---

[7] It bears noting that it is not even clear if Plaintiff lost health insurance coverage when her employment terminated, as she was also entitled to, and likely covered by, her husband's benefits, as he was also an employee with Defendant. Specifically, at her deposition, Plaintiff testified that when she was terminated, she lost her "half of the insurance," which does not make sense. *See* Exhibit 6, Pl.'s Depo. Tr. at 180:23–181:5.

12.

prejudicial to Defendant because this disclosure and newfound, bare-bones request was well outside the window of discovery, which prevented Defendant from having the opportunity—let alone the ability—to conduct discovery on such purported damages.

Nevertheless, at closing arguments and for the first time, Plaintiff's counsel improperly and inappropriately requested from the jury a previously undisclosed calculation at a number that he seemingly came up with out of thin air, requesting "at a minimum, $500 a month" in benefits with no foundation, no evidence, and no basis to make such a request. (J. Trial Tr. Day 5 at 1026:14–16). In fact, Plaintiff's last-minute request for damages for some unidentified benefits was so unfounded and so unsupported by *any* evidence introduced at trial that Defendant's counsel objected to such misrepresentations by stating, "The amount of insurance benefits that she has received or has not received has not been presented in this case or identified." (*Id.* at 1029:23–24). There is no evidence of any specific damages suffered as a result of any lost benefits, and Plaintiff is therefore not entitled to any sort of damages award on this basis. As held by the Ninth Circuit and courts in this Circuit, Plaintiff's failure to provide any actual, post-termination, out-of-pocket expenses as evidence is fatal to her request for damages for her benefits, and the jury's award including such a calculation is in clear error. Therefore, the Court should grant remittitur and reduce the jury's award to $10,977.20—the only amount to which Plaintiff is entitled under the math and the law.

In addition to Plaintiff's request for benefits being unfounded and unsupported, it bears noting that any award of benefits is also against the clear weight of evidence because the evidence demonstrated that Plaintiff failed to mitigate her damages in relation to her benefits. Specifically, Plaintiff testified that she only applied to one job that had full-time benefits comparable to her position with Defendant when she initially applied for employment at Caesars, but once Plaintiff received her seasonal Cabana Host position at Caesars—which does not provide benefits—she accepted this role and has been there ever since. (*See* J. Trial Tr. Day 3, P.M. Session at 736:13–737:7). Plaintiff testified that she voluntarily remains in this position at Caesars even though she does not receive insurance and other benefits. (*Id.*). This is a failure to mitigate any sort of insurance benefits damages to which Plaintiff believes she is entitled and is further grounds to exclude such an award.

Either way, the jury's award based on Plaintiff's calculation of benefits is in clear error and

should be corrected. Plaintiff should thus accept the remittitur excluding this amount. If Plaintiff chooses not to, then a new trial is necessary to demonstrate that *nothing* in evidence exists to entitle Plaintiff to any sort of damages award for benefits.

## II. DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 37

### A. INTRODUCTION

As discussed *supra*, Plaintiff's closing argument requested damages categories and amounts that, despite five years in litigation, had never been disclosed nor computed. This improper guerilla tactic severely prejudiced Defendant, as the jury accepted Plaintiff's counsel's inaccurate, unsupported, and undisclosed calculations as true. Defendant did not have an opportunity to address these calculations or cure them, as Plaintiff's counsel introduced them for the first time during his closing argument and rebuttal. Plaintiff did not disclose them in discovery. Plaintiff did not disclose them through her testimony. And, Plaintiff did not disclose them through evidence at trial. This misconduct is in direct violation of Plaintiff's obligation under Rule 26 and is therefore subject to sanctions under Rule 37. Consequently, regardless of the outcome of Defendant's Motion for Remittitur, the jury's verdict is also improper in that it is premised at least in part upon Plaintiff's intentional violation of her discovery obligations under Rule 26.

### B. LEGAL STANDARD

In evaluating a motion for sanctions under Rule 37(c), the Court uses a two-step process. First, the Court considers whether the party requesting sanctions met its burden of establishing that the opposing party failed to comply with the disclosure requirements. *Turner v. Harvard MedTech of Nevada, LLC*, No. 2:22-CV-01264-JCM-BNW, 2024 WL 3028379, at *1 (D. Nev. June 14, 2024) (citing *Silvgani v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241–42 (D. Nev. 2017)). Second, so long as the movant meets its initial burden, the Court examines whether the party opposing sanctions demonstrates that its failure to comply with the disclosure requirements was either substantially justified or harmless. *Id.* "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, **or at a trial**, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

14.

To that end, district courts have identified "[s]everal factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017); *see Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191–92 (9th Cir. 2022) (same). The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1178 (9th Cir. 2008); *Anhing Corp. v. Viet Phu, Inc.*, 671 F. App'x 956, 958 (9th Cir. 2016).

### C.  ARGUMENT

Rule 37(c)(1) authorizes a court to sanction a party for failing to produce information required by Rule 26(a) or (e). Rule 26(e)(1) requires a "party who has made a disclosure under Rule 26(a)" to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Rule 26(e)(1) "creates a '***duty*** to supplement,' not a right." *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x. 496, 500 (9th Cir. 2009) (emphasis added). "The word 'computation' contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages." *Allstate Ins. Co. v. Nassiri*, No. 2:08-CV-00369-JCM-GWF, 2011 WL 2977127, at *4 (D. Nev. July 21, 2011) (citing *City & Cnty. of S.F. v. Tutor–Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003)); *see also Olaya v. Wal-Mart Stores, Inc.*, No. 2:11-CV-997-KJD-CWH, 2012 WL 3262875, at *2 (D. Nev. Aug. 7, 2012) (stating that a "list of the broad types of damages" is insufficient). Additionally, the party seeking damages must "***timely*** disclose its theory of damages" as well as the "basic method or formula by which it contends its damages should or will be calculated even if it cannot identify the specific dollar amount of damages pending further discovery." *Allstate Ins. Co.*, 2011 WL 2977127, at *4 (emphasis added).

A plaintiff's failure to supplement her computation of damages is subject to Rule 37 sanctions. Specifically, under Rule 37(c)(1), a party may ***not*** use at trial information that Rule 26(a) requires to be disclosed that was ***not*** properly disclosed. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008). This is "a 'self-executing, automatic

sanction to provide a strong inducement for disclosure of material.'" *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1247 (D. Ariz. 2015) (quoting *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). As a sanction, Rule 37(c)(1) permits a court to order the payment of reasonable expenses caused by the failure or to impose "other appropriate sanctions." *See* Fed. R. Civ. P. 37(c)(1)(A)-(C); *see also Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022).

Here, Defendant is entitled to sanctions for Plaintiff's improper and sanctionable conduct when Plaintiff failed to timely disclose damages due to lost benefits as an element of damages in her initial disclosure, or any computation of any damages allegedly caused by loss of benefits, and then intentionally and improperly provided a previously undisclosed calculation during closing arguments. This conduct is neither justified nor harmless. This case has been pending for over five years and discovery lasted for more than 2 years and 4 months from July 15, 2019, until October 29, 2021. Plaintiff could have disclosed that she was seeking damages for her lost benefits at ***any point*** during discovery but failed to do so. As discussed *supra*, Plaintiff never requested to recover benefits in this lawsuit until closing arguments when she sprung an undisclosed calculation of the value of unidentified lost benefits on the jury, Defendant, and this Court. Plaintiff and her counsel's conduct in this regard was clearly intentional as they were aware of their disclosures in this case including the fact that they were presenting a previously undisclosed calculation of damages for the first time in closing argument.  Plaintiff's premeditated and improper conduct was clearly calculated and intended to prevent Defendant the opportunity to conduct discovery on this issue, let alone defend itself against this previously-undisclosed-claimed category of damages and calculation of the same. Plaintiff never provided a calculation or computation of these damages, and Defendant still has no clue where the request for this category of damages comes from. This failure is in direct violation of Rule 26 and triggers automatic Rule 37 sanctions.

Moreover, Plaintiff's counsel is unable to demonstrate that their failure to comply with Rule 26 was justified or harmless. When considering whether a failure to comply with Rule 26 is justified or harmless, courts look at four factors: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence. *Silvagni*, 320 F.R.D. at 242.

Plaintiff's last-minute request for this remedy certainly surprised Defendant as demonstrated by Defendant's counsel's objection to Plaintiff's counsel's closing arguments, but more importantly, it severely prejudiced Defendant, as the jury relied on Plaintiff's incorrect and violative representations in calculating its award. Defendant was entirely unable to cure this prejudice, as Plaintiff made this request for the first time, on the last day of a five-day trial during Plaintiff's counsel's closing argument and rebuttal—well after evidence had closed. Plaintiff reiterating that Plaintiff was entitled to benefits disrupted trial as it was the last thing the jurors heard before deliberating, and it certainly influenced them. And, Plaintiff's counsel engaged in this conduct willfully and in bad faith because Plaintiff's counsel continued to ask for such a remedy in his rebuttal closing argument after drawing an objection immediately before for the exact same conduct. Plaintiff's blatant failure to comply with Rule 26 in her request for damages was neither justified nor harmless, and therefore, Plaintiff and her counsel are unable to refute the necessitation of sanctions.

Based on the foregoing, Defendant requests that Plaintiff's counsel be appropriately sanctioned under Rule 37. Initially, Defendant requests that it recover the fees expensed for this briefing and reply, as it would not have occurred but for Plaintiff's misconduct. Defendant further requests that the Court preclude Plaintiff from recovering any damages due to alleged lost benefits as a sanction pursuant to Federal Rule of Civil Procedure 26(b)(2)(A)(i), (ii) or (iii), and any further sanctions the Court deems appropriate as an award of attorney's fees, alone, provides little if any deterrent to Plaintiff. The conduct of Plaintiff's counsel is exactly the sort of conduct that this sanction is designed to address. *See, e.g.*, *Turner v. Harvard MedTech of Nevada, LLC*, No. 2:22-CV-01264-JCM-BNW, 2024 WL 3028379, at *4 (D. Nev. June 14, 2024) (awarding attorney's fees to the defendant for the plaintiff's failure to timely disclose damages); *Macias v. Smith's Food & Drug Ctr.*, No. 2:20-CV-01554-JAD-NJK, 2020 WL 7439703, at *3 (D. Nev. Dec. 17, 2020) (issuing Rule 37 sanctions when a plaintiff failed to disclose damages in a timely manner).

While Defendant seeks a fair and judicious outcome based on the evidence available and presented to the jury at trial, Defendant further requests that, at a minimum, any additional fees that must accrue due to Plaintiff's misrepresentations be at the cost of Plaintiff and her counsel. Regardless of the outcome of Defendant's motion for remittitur, Plaintiff's sanctionable conduct with respect to

seeking previously undisclosed damages for lost benefits independently would require a new trial as to damages since it is impossible to ascertain what portion of the damage award is attributable to damages for lost benefits. If a new trial on damages must occur, Plaintiff should additionally be sanctioned by paying for Defendant's fees to prepare and engage in the new trial, and that Plaintiff not be entitled to her fees for doing so. Defendant believes that while it may be entitled to a more heightened sanction that the Court may deem more appropriate, at a minimum, these requested sanctions are warranted to deter Plaintiff's counsel from engaging in such improper conduct in the future.

### III.  CONCLUSION

Math is math, and the law is the law. After five days of trial and a slew of misrepresentations by Plaintiff's counsel, it is clear that the jury got both the math and the law wrong here. The jury miscalculated the damages that Plaintiff is entitled to under the FMLA and grossly exceeded the bounds of what she is actually entitled to in calculating its award. This amounts to clear error and entering such an award without granting a remittitur would be a manifest injustice. Because of this, the Court should grant Defendant's remittitur request to reduce the award to $10,977.20. If Plaintiff does not agree to this amount, then the Court should order a new trial solely on damages.

The jury's calculation was also improper because of Plaintiff's counsel's representations at closing argument, which presented previously undisclosed claimed damages for lost benefits and a previously undisclosed calculation of such damages. Because the jury relied on Plaintiff's counsel's sanctionable and improper misrepresentations, the Court should sanction Plaintiff's counsel for these blatant violations of Rule 26.

Dated:  November 19, 2024

Respectfully submitted,

*/s/ Kelsey E. Stegall*
PATRICK H. HICKS, ESQ.
WENDY MEDURA KRINCEK, ESQ.
KELSEY E. STEGALL, ESQ.
LITTLER MENDELSON, P.C.

Attorneys for Defendant
WYNN LAS VEGAS, LLC

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169. On November 19, 2024, I served the within document(s):

**DEFENDANT WYNN LAS VEGAS, LLC'S MOTION FOR REMITTITUR (FRCP 59) AND MOTION FOR SANCTIONS (FRCP 37)**

☐ BY **Email** - by e-mailing a copy of the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

☒ By **CM/ECF Filing** – Pursuant to FRCP 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Christian Gabroy, Esq.
Kaine Messer, Esq.
GABROY | MESSER
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, NV 89012

Attorneys for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 19, 2024, at Las Vegas, Nevada.

*/s/ Ann Koorndyk*
Ann Koorndyk