# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TIARE RAMIREZ, | Case No.: 2:19-cv-01174-APG-EJY |
| Plaintiff | **Order on Post-Trial Motions** |
| v. | [ECF Nos. 174, 175, 179, 183, 188, 189, 190] |
| WYNN LAS VEGAS, LLC, | |
| Defendant | |

A jury awarded plaintiff Tiare Ramirez $321,200 in lost wages and benefits on her claim of Family Medical Leave Act (FMLA) interference against defendant Wynn Las Vegas, LLC. The jury did not find Wynn liable on Ramirez's Americans with Disabilities Act (ADA) discrimination claim and I granted Wynn's motion for judgment as a matter of law on her negligent hiring, training, and supervision claims.

Both parties now bring various post-trial motions. Wynn moves for remittitur or a new trial on damages, moves for Rule 37 sanctions against Ramirez's counsel, renews its motion for judgment as a matter of law on the FMLA claim, and submits a bill of costs. Ramirez moves for a new trial on her ADA discrimination claim and on her negligent hiring, training, and supervision claims. She also moves for equitable relief, statutory damages, attorneys' fees, and costs.

The parties are familiar with the facts, so I repeat them here only as necessary to decide the motions. For the reasons described below, I grant Wynn's motion for remittitur or new trial. I also grant in part Ramirez's motions for statutory damages, attorneys' fees, and costs. I deny the other motions.

**I.  DISCUSSION**

   **A.  The evidence presented at trial does not support the jury's verdict, so Wynn is entitled to a new trial on damages unless Ramirez accepts remittitur.**

   Wynn argues that the jury's award of $321,200 cannot be sustained by the evidence presented at trial.  It asserts that to reach that number, the jury must have either failed to offset Ramirez's lost wages by her earnings over the relevant time period or awarded damages for lost benefits, for which no evidence was presented.  Ramirez responds that the jury was permitted to ignore her subsequent earnings and that there was evidence of lost benefits, particularly the Wynn employees' collective bargaining agreement (CBA).

   If, after viewing the evidence in the light most favorable to Ramirez, I conclude that the jury awarded excessive damages, I may order a new trial on damages or deny the motion conditioned on Ramirez's acceptance of a remittitur. *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir. 1988).  I may order a new trial even if substantial evidence supports the jury's verdict on liability where the damages award is excessive. *Id.*; *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987) ("Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict."), *as amended by Seymour v. Summa Vista Cinema, Inc.*, 817 F.2d 609 (9th Cir. 1987).  "A remittitur must reflect the maximum amount sustainable by the proof." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (quotation omitted).

   The FMLA limits a successful employee's recovery to "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I).  Punitive damages and damages for emotional distress are not recoverable. *Farell v. Tri-County Metro. Transp. Dist. of Or.*, 530 F.3d 1023, 1025 (9th Cir.

2008).  Back pay for lost wages is calculated by "measuring the difference between actual earnings for the period and those which she would have earned" absent Wynn's FMLA interference. *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999). Benefits such as medical and life insurance are compensable "if the plaintiff has purchased substitute insurance coverage or has incurred uninsured, out-of-pocket medical expenses for which he or she would have been reimbursed under the employer's insurance plan." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1517 (9th Cir. 1986).[1]  Awards for lost insurance coverage rather than expenses are "simply not a monetary benefit owing to the plaintiff" and including them "would make a plaintiff more than whole." *Id.*

Ramirez presented evidence that she earned an average of $28 per hour in wages and tips. And she testified that she would have worked full time after she returned from her medical leave. Based on this evidence, her counsel argued that she would have earned $301,280 from the date when Wynn suspended her to the cutoff date of December 31, 2022. ECF No. 164 at 56-57 (multiplying 28 x 40 hours x 269 weeks).[2]  Wynn asserts, and Ramirez does not contest, that Ramirez's actual earnings at other jobs over that period were $280,802.16 as reflected by her tax

---

[1] Ramirez argues that I should not follow *Galindo* because it articulated this standard in the context of an unfair union representation suit.  However, the Ninth Circuit also applied this damages calculation in a Title VII case. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 902 (9th Cir. 1994).  And other district courts have applied this standard to damages under the FMLA. *See Zisumbo v. Convergys Corp.*, No. 1:14-cv-00134, 2020 WL 3546794, at *7 (D. Utah, June 30, 2020); *Bowyer v. Dish Network, LLC*, No. 08-1496, 2010 WL 1610112, at *7-8 (W.D. Penn., Apr. 20, 2010); *Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 68, 76 (D. Mass. 2000).  Ramirez does not provide a compelling reason why her benefits damages should be calculated differently and does not point to any case where a court allowed damages for insurance coverage rather than out-of-pocket expenses.

[2] Although Ramirez was not regularly working 40 hours per week prior to her termination at Wynn, she testified that she worked full time in her subsequent position at Caesar's Palace and the jury could have reasonably inferred that she would have worked full time at the Wynn after returning from her medical leave. *See* ECF No. 157 at 86.

documents.[3]  The jury was instructed to reduce any lost wages award by the amount Ramirez earned or could have earned. ECF No. 165 at 33.

Ramirez testified that in addition to her lost wages she also lost her benefits, specifically her seniority and insurance.  ECF No. 157 at 22, 25-26.  Although she stressed that insurance was very important to her family and that seniority is important with regards to hours and protecting against layoffs, she did not offer any testimony explaining what the value of these benefits should be or expenses she incurred due to losing them.  To the extent seniority affects the number of hours or shifts Ramirez receives, its value is incorporated in the lost wages calculation, which assumed 40 hours of work per week.  Ramirez's counsel argued at closing that her lost benefits "were seniority and what-not," and suggested a value of $500 per month. ECF No. 164 at 57.  But there is no testimony or evidence to support this amount.  And, as Wynn notes in its motion for sanctions, Ramirez did not disclose that she was seeking damages for lost benefits prior to trial.  Ramirez argues that the CBA was included in evidence and the jury may have reviewed the benefits tables to come up with their final award.  But *Galindo* and similar cases make clear that absent a showing of actual expenses, simply paying Ramirez the money that would have gone to a health plan would leave her "more than whole." 793 F.2d at 1517.[4]

---

[3] Wynn's calculations omit $2,370 Ramirez received from unemployment in 2017 and reflect lower total wages from her job at Able Baker Brewing Company LLC than is reflected as her total compensation of wages and cash tips. ECF Nos. 157 at 90-91; 174-2 at 26, 29.  I will credit Wynn's calculations as conceding these amounts should not be included in Ramirez's mitigation offset. *See* ECF No. 174 at 8 & n.2.

[4] Many of the other benefits Ramirez calculates in her exhibits cannot be added to her total because she would receive them instead of, not in addition to, wages.  The $301,280 in lost wages already assumes 40 hours per week, 52 weeks per year earning both her hourly wage and $15 per hour in tips. ECF Nos. 164 at 55-57; 185-5 at 5.  Vacation pay, holiday pay, and medical leave would be paid in lieu of hours worked and would likely not include tips, or at least there was no evidence that tips would be included.  Other benefits such as meals, uniforms, training, parking, and childcare are not compensable unless she incurred actual expenses due to the loss of these benefits because, like her insurance, awarding their value without incurring the expenses

1    Because no evidence of compensable lost benefits was presented to the jury, the

2    maximum award supported by the evidence was $301,280.  And because Ramirez undisputedly

3    earned $280,802.16 during the relevant period, the net lost wages are $20,477.84. ECF Nos. 157

4    at 88-93; 174-2.[5]  This is the maximum amount sustainable by the evidence presented at trial.

5    Accordingly, I grant Wynn's motion for a new trial on damages unless Ramirez agrees to

6    remittitur in the amount of $20,477.84.

7    **B.  I deny Wynn's motion for Rule 37 sanctions because it is too late and the harm is**

8    **cured by my granting a new trial or remittitur.**

9    Wynn moves for sanctions under Federal Rule of Civil Procedure 37(c), asserting that

10    Ramirez failed to disclose that she was seeking damages for lost benefits.  Wynn also requests

11    attorneys' fees incurred in preparing its motion for remittitur and reply brief, as well as any

12    future fees incurred preparing for a new trial on damages.  Wynn also asks that I preclude

13    Ramirez from recovering lost benefits if there is a new trial on damages.  Ramirez responds that

14    Wynn failed to adequately object to her damages argument at trial and that Wynn's case citations

15    do not support its position.

16    Rule 37(c)(1) prohibits parties from using at trial information or evidence they failed to

17    disclose as required by Rule 26(a) or (e) unless such failure was substantially justified or

18    harmless.  In addition to or instead of excluding the evidence, I may impose sanctions including

19    attorney's fees and informing the jury of the party's failure. Fed. R. Civ. P. 37(c)(1).  Factors that

20

21    would result in a windfall for Ramirez.  Ramirez presented no evidence to support an award of
damages for any of these categories.

22    [5] Ramirez's contention that removal of the word "net" from the FMLA Interference—Damages
jury instruction allowed the jury to award gross lost wages is meritless because the Damages—

23    Mitigation jury instruction instructed the jury to subtract the amount she earned or could have
earned over that period. ECF No. 165 at 33.

guide my determination whether a violation is justified or harmless include "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010). I have "wide latitude" to exercise my discretion in deciding whether to issue sanctions under Rule 37(c)(1). *Hoffman v. Constr. Protective Svcs., Inc.*, 541 F.3d 1175, 1178 (9th Cir. 2008) (quotation omitted).

Rule 26(a)(1)(A)(iii) requires disclosure of "a computation of each category of damages claimed by the disclosing party." And Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." Ramirez did not calculate damages for lost benefits in her initial disclosures. ECF No. 175-6 at 4. She supplemented her disclosure four times but none of them included lost benefits. *Id.* at 11-12, 17-18, 23-24, 31-32.

At trial, Ramirez testified about losing her seniority and insurance but did not ascribe any economic value to those benefits. *See* ECF No. 157 at 22, 25-26. At closing, her counsel argued that her lost benefits and her "seniority and what not" should be valued "at a minimum, $500 a month." ECF No. 164 at 57. Wynn's counsel objected outside the jury's presence to Ramirez arguing insurance benefits because they have not been presented or identified in this case. *Id.* at 60. Much of the subsequent discussion with the court focused on Wynn's objection based on alleged violations of the Nevada Rules of Professional Conduct. *Id.* at 60-62. Wynn did not request any curative instruction to the jury, stating "[w]e just want to caution him for rebuttal, Your Honor, to not make the same mistakes." *Id.* at 62.

Ramirez failed to disclose that she was seeking damages for lost benefits. Wynn suffered prejudice at trial because it was unable to rebut the value of lost benefits with any evidence during the trial. Although Wynn was unable to cure the prejudice through contrary evidence, it could have requested a curative instruction be given to the jury. Trial was not significantly disrupted because there was no discussion of the value of Ramirez's benefits until closing arguments. Finally, Ramirez had no justification for failing to disclose these damages because she was aware of this impact from the moment she was terminated, testifying "when you have a family, insurance is the most important thing." ECF No. 157 at 22. Her failure to disclose was therefore neither substantially justified nor harmless.

Because Wynn brings this motion post-trial, it is too late to exclude the evidence under Rule 37(c)(1). And I am not inclined to issue other sanctions because the issue is largely moot in light of my ruling on remittitur. Any harm or prejudice caused by the jury impermissibly including lost benefits in its damages calculation is cured by my grant of Wynn's motion for new trial or remittitur. Additionally, it is not clear if the jury's damages award included lost benefits as Ramirez suggests, reflects a failure to offset Ramirez's earnings as Wynn suggests, or some combination of both. If it was a failure to offset Ramirez's earnings then Wynn's motion for remittitur would still be necessary, so I deny its request for attorney's fees. As to future sanctions, Wynn's motion is not ripe because I do not know whether Ramirez will choose a new trial on damages or accept the remittitur. Accordingly, I deny Wynn's motion for sanctions under Rule 37(c)(1).

/ / / /

/ / / /

/ / / /

7

**C. The jury reasonably believed Ramirez's FMLA leave was medically necessary, so Wynn is not entitled to judgment as a matter of law.**

Wynn renews its motion for judgment as a matter of law on Ramirez's FMLA claim. It argues that Ramirez failed to prove that her FMLA leave was medically necessary or that her taking FMLA leave was a negative factor in Wynn's decision to terminate her employment. Ramirez responds that she presented sufficient evidence on these elements to support the jury's verdict.

After a party has been fully heard on an issue during a jury trial "and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party." Fed. R. Civ. P. 50(a)(1). If I do not grant a motion for judgment as a matter of law, "the movant may file a renewed motion for judgment as a matter of law" after the jury's verdict. Fed. R. Civ. P. 50(b). I may rule on this renewed motion by (1) allowing judgment on the verdict, (2) ordering a new trial, or (3) directing entry of judgment as a matter of law. *Id.* "Judgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict." *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013) (quotation omitted).

The jury reasonably determined that Ramirez's FMLA leave was medically necessary. Ramirez testified that her feet began to swell and became painful, that she changed into different shoes, and that she needed to take pain medication. ECF No. 156 at 26-29. She also showed a photo she asserts was taken contemporaneously, depicting her painful, swollen feet. ECF Nos. 157 at 6-8; 135-16 at 2. Ramirez's FMLA certification indicates "[w]hen she's unable to walk – she's to stay home" due to a "chronic ankle condition." ECF No. 135-6 at 5.

1   Wynn appears to take this directive literally, arguing that Ramirez was able to walk

2   because she walked from the Blue Martini to her car and from her car to GameWorks. But

3   viewing the evidence in the light most favorable to Ramirez, she made these short walks only to

4   change out of her painful shoes and to take her pain medication with food as directed. The

5   evidence supports a reasonable inference that she was unable to walk to the extent necessary to

6   perform her essential job functions, and the certifying physician testified that he meant "when

7   she's unable to walk specifically at work . . . she's to stay home." ECF No. 156 at 84-85.

8   The jury also reasonably determined that Ramirez's use of FMLA leave was a negative

9   factor in Wynn's decision to terminate her. Wynn argues that it terminated Ramirez not for

10  using her leave, but for dishonesty and misusing leave. But this assertion derives from Wynn's

11  medical necessity argument. If the jury could reasonably find that Ramirez's FMLA leave was

12  medically necessary, then it could reasonably determine that she was not misusing that leave or

13  being dishonest in taking it. And the FMLA does not permit an employer to defend against an

14  FMLA claim on the basis that it reasonably but mistakenly believed an employee was misusing

15  leave. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) (Whether the

16  employer or employee believed at the time that her absences "were protected by the FMLA is

17  immaterial, however, because the company's liability does not depend on its subjective belief

18  concerning whether the leave was protected."). Construing the evidence in the light most

19  favorable to Ramirez, the jury reasonably accepted her testimony and concluded that her FMLA

20  leave was medically necessary and a negative factor in Wynn's decision to terminate her. Thus,

21  I deny Wynn's renewed motion for judgment as a matter of law.

22  ////

23  ////

**D. Ramirez is not entitled to a new trial on her claims that were denied.**

Ramirez moves for a new trial on her unsuccessful claims for ADA discrimination and for negligent hiring, training, and supervision. I previously granted Wynn's motion for judgment as a matter of law on the negligence claims, and the jury found in Wynn's favor on the ADA discrimination claim. Ramirez argues that additional evidence should warrant a new bench trial on these claims. Wynn responds that this evidence was available to Ramirez before and during the trial and that it would not change the outcomes.

I may grant a motion for a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). I "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based on false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation omitted). To be entitled to a new trial based on newly discovered evidence, Ramirez must establish that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000).

1. ADA Discrimination

Ramirez requests a new trial on her ADA discrimination claim because she believes Wynn's corporate representative, Brian Cohen, falsely testified that Ramirez had reached her maximum number of attendance points, giving her the motive to abuse her medical leave. Ramirez further argues that a document her counsel recently discovered undermines a portion of Cohen's testimony. Wynn responds that this document was in Ramirez's possession prior to and

1   during trial, she knew Wynn's defense theory in advance, and Ramirez's attendance record was

2   not material to the jury's verdict.

3        Wynn argued at trial that Ramirez feared she would be terminated if she accrued

4   additional attendance points and that Ramirez's FMLA certification was her "ticket to get out of

5   work." ECF No. 164 at 72, 78.  The attendance report presented at trial showed zero active

6   attendance points.  Cohen testified that was because it was generated years after any points

7   would have expired. ECF No. 160 at 88-89.  Cohen further stated, "[i]f I had opened this on

8   November 2nd of 2017, then I would have seen one point, half a point, one and a half points –

9   the points would have shown because those would have been active at the time." *Id.* at 89.

10  Ramirez now offers a document that she asserts was created on November 14, 2017, which

11  shows "N/A" under Ramirez's attendance points. ECF No. 183-8 at 4.

12        None of these facts, however, warrants a new trial on Ramirez's ADA discrimination

13  claim.  First, the document that Ramirez asserts undermines Cohen's testimony and Wynn's

14  defense was in Ramirez's possession prior to and during trial.  Her counsel admits he discovered

15  it while reviewing the record in response to Wynn's motion for sanctions. ECF No. 183 at 6-7.

16  Second, because the attendance points drop off after one year, the fact that Ramirez had zero

17  active attendance points in November of 2017 does not necessarily undermine Wynn's evidence

18  that she had been counseled in January of that year for having eight attendance points. *See* ECF

19  No. 160 at 35-36 (testimony by Wynn human resources employee that she gave a counseling

20  notice about attendance on January 28, 2017).  The incident that precipitated Ramirez's

21  suspension occurred on March 21, 2017. ECF No. 156 at 14.  Finally, the jury appears to have

22  rejected Wynn's attendance points defense theory because it was equally applicable to Ramirez's

23  FMLA claims, which she prevailed on.  In closing arguments, Wynn's counsel focused on the

1  FMLA certification and leave as Ramirez's "ticket" to miss work and avoid attendance points.

2  ECF No. 164 at 72.

3       Ramirez had the 2017 attendance document in her possession at the time of trial and the

4  jury's finding in favor of Wynn was not contrary to the clear weight of the evidence. I therefore

5  deny her motion for a new trial on her ADA discrimination claim.

6                    2.  Negligent Hiring, Training, and Supervision

7       Prior to closing arguments, Ramirez abandoned her claim for negligent hiring, and I

8  granted Wynn's motion for judgment as a matter of law on her negligent training and supervision

9  claims. ECF No. 161 at 42, 64-65.  I granted the motion because Ramirez failed to identify a

10  standard of care through expert testimony, statutes, or regulations that the jury could measure

11  Wynn's actions against. *Id.* at 65.  Ramirez moves for a new trial on this claim, arguing vaguely

12  that a 2019 decision and order by the Massachusetts Gaming Commission about Wynn's internal

13  investigations into sexual misconduct warrants a new trial.  Wynn responds that this document is

14  irrelevant to the current case, could have been discovered with reasonable diligence prior to trial,

15  and still does not identify a standard of care for training and supervision.

16       The Massachusetts decision does not cure the standard of care defect in Ramirez's

17  negligent training and supervision claims.  Ramirez could have discovered this document,

18  published April 30, 2019, well before the close of discovery on October 29, 2021. ECF Nos. 52;

19  183 at 12.  While Ramirez notes that Wynn did not produce this document during litigation, she

20  does not identify any authority that would require Wynn to produce a publicly available decision

21  from another state's administrative gaming board that did not involve the dispute at issue in this

22  case.  And this decision does not establish an industry standard for training and supervision

23  against which a factfinder could measure Wynn's conduct.  Instead, it concerns "Wynn's

1    employment policies and its personnel's alleged failure to follow same" with regard to Steve

2    Wynn. ECF No. 209 at 5.  I previously rejected Ramirez's argument that Wynn's own internal

3    policies could set the relevant standard of care. ECF No. 161 at 51-55, 65.

4        The decision and order of the Massachusetts Gaming Commission was publicly available

5    to Ramirez prior to trial, and it does not cure the fatal defect in her negligent training and

6    supervision claims.  I therefore deny her motion for a new trial on those claims.

7        **E.  Ramirez has not demonstrated an entitlement to equitable relief.**

8        Ramirez moves for equitable relief based on her successful FMLA claim.  Specifically,

9    she asks that I reinstate her to her former position with full seniority and benefits and order

10   Wynn to remove all negative information from her personnel records.  Alternatively, she

11   requests front pay in lieu of reinstatement.  She also requests that I order Wynn to implement

12   additional FMLA training for its employees.  Wynn responds that Ramirez did not seek equitable

13   relief in her pretrial disclosures and that equitable relief is not appropriate in this case.

14       The FMLA provides "for such equitable relief as may be appropriate, including

15   employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).  Reinstatement is

16   preferred, but "sometimes it simply isn't practical." *Traxler v. Multnomah Cnty.*, 596 F.3d 1007,

17   1012 (9th Cir. 2010).  I may award front pay at my discretion if I determine that "reinstatement is

18   inappropriate, such as where no position is available or the employer-employee relationship has

19   been so damaged by animosity that reinstatement is impracticable." *Id.*

20       I decline to reinstate Ramirez to her position at Wynn because it is not practical or in the

21   interest of justice.  Nearly eight years have passed since Wynn terminated Ramirez.  In that time,

22   the parties have engaged in extensive and costly litigation creating animosity between them.

23   Ramirez, meanwhile, has found alternative work which she enjoys to the degree that she has

stopped searching for other employment. ECF No. 157 at 14, 87-88.  Her new position also pays

her more per year than she made while she worked at the Wynn, albeit without the same benefits.

Finally, Ramirez did not seek reinstatement in any of her damages disclosures until her fourth

supplement, made only a few months before trial. *Compare* ECF Nos. 200-5 at 5-6 *with* 200-6 at

8.

I also decline to order front pay in lieu of reinstatement.  Ramirez suggests an award of

front pay equal to the jury's backpay award of $321,200.  Although Ramirez correctly notes that

the purpose of front pay is to make a plaintiff whole, she does not perform any analysis to

explain why her future lost wages would be the same as the unmitigated past lost wages the jury

awarded.  As discussed in my remittitur analysis, Ramirez's backpay damages are significantly

less when her earned income is deducted, and she never earned as much at the Wynn as she

makes at her new job.  Although she no longer has health insurance or other benefits, she has not

demonstrated the out-of-pocket cost of losing those benefits.  She also has not demonstrated that

she would be unable to find equivalent full-time work if she continued to search.  Because

Ramirez has not met her burden of demonstrating that her requested front pay award is necessary

to make her whole, I deny her motion for front pay. *See Traxler*, 596 F.3d at 1012 ("Because of

the potential for windfall the use of front pay must be tempered." (simplified)).

I also decline to order Wynn to sanitize Ramirez's personnel records or to hold additional

FMLA training.  Ramirez did not request to have her file purged until her fourth supplemental

disclosure only two months before trial, and never requested additional training.  Although her

complaint vaguely requested "[s]uch other and further relief as the Court may deem just and

proper," she never made specific requests until the eve of trial.  She also does not explain what

additional training Wynn should implement.  As I held in granting Wynn's motion for judgment

as a matter of law on her negligent training and supervision claims, Ramirez has not

demonstrated that Wynn's training deviated from some industry or statutory standard.

Therefore, I deny Ramirez's motion for equitable relief.

**F.  I award Ramirez prejudgment interest but not liquidated damages or a gross up.**

Ramirez moves for liquidated damages, prejudgment interest, and gross-up for tax

purposes under the FMLA.  Wynn responds that its violation of the FMLA was in good faith,

that Ramirez did not demonstrate the need for a gross-up, and that it disputes Ramirez's interest

calculations.

The FMLA entitles eligible employees to interest on an award of lost wages and benefits

"calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(ii).  It also provides for "an

additional amount as liquidated damages equal to" the amount of back pay, benefits, and interest.

29 U.S.C. § 2617(a)(1)(A)(iii).  But if the employer "proves to the satisfaction of the court that

the act or omission which violated [the FMLA] was in good faith and that the employer had

reasonable grounds for believing that the act or omission was not a violation," I may, in my

discretion, decline to award liquidated damages. *Id.*

1.  Prejudgment Interest

The FMLA does not define the prevailing rate for calculating interest.  District courts

have employed several methods of calculating interest rates on FMLA awards. *See Bell v. Prefix,*

*Inc.*, 500 Fed. Appx. 473, 474-75 (6th Cir. 2012) (collecting cases).  "Generally, the interest rate

prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of

pre-judgment interest." *Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014)

(quotation omitted).  Ramirez suggests applying the average prime rate from November 2017 to

15

October 2024, but she does not provide any compelling reasons for this rate rather than the default rate under § 1961.

Section 1961(a) sets the rate on interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." (simplified). This interest must be compounded annually. 28 U.S.C. § 1961(b). The jury rendered its verdict on October 25, 2024. The applicable interest rate for the preceding week was 4.19%.[6] Compounding this rate annually on Ramirez's remitted damages of $20,477.84 from November 2017 until October 2024 yields a total interest amount of $6,722.91 for a total award of back pay plus prejudgment interest of $27,200.75.

### 2.  Liquidated Damages

The FMLA presumes that Ramirez is entitled to liquidated damages, and "it is the employer's burden to overcome this presumption by proving its reasonableness and good faith." *Isom v. JDA Software, Inc.*, 225 F. Supp. 3d 880, 887 (D. Ariz. 2016); 29 U.S.C. § 2617(a)(1)(A)(iii). To determine if Wynn acted in good faith, I "evaluate the facts based on the most reasonable interpretation of the jury's verdict." *See Mooney v. Roller Bearing Co. of Am., Inc.*, No. 2:20-cv-01030-LK, 2023 WL 6979640, at *2 (W.D. Wash. Oct. 23, 2023) (quotation omitted). The jury's decision that Wynn violated the FMLA does not preclude a finding that Wynn acted in good faith. *Traxler*, 596 F.3d at 1016 ("Indeed, an employer may violate the FMLA through acts that are taken in good faith.").

---

[6] *See Post-Judgment Interest Rates – 2024*, https://www.casb.uscourts.gov/sites/casb/files/historic_rates_new.pdf (last visited July 22, 2025).

Wynn has demonstrated that its actions were made in good faith, and it had reasonable grounds for believing that it was not violating the FMLA.  Wynn had previously honored Ramirez's other FMLA leave requests without discipline. ECF Nos. 153 at 78; 157 at 36.  It also permitted her to take additional medical leave prior to suspending her pending the investigation. ECF No. 153 at 79-80.  Wynn employee Ian LaCuesta told Wynn's investigator that he continued to socialize with Ramirez and her husband immediately after Ramirez had called out of work on the date in question. ECF Nos. 135-9 at 2; 150 at 82-85.  Wynn disbelieved Ramirez's explanation for staying out in favor of LaCuesta's statement. *See* ECF No. 135-13 at 2.  A photograph depicting Ramirez at the gender reveal party wearing high heels and posted to Facebook after Ramirez had called off work further supported Wynn's suspicions.  ECF Nos. 153 at 126, 128, 206; 135-8 at 2.  And Ramirez initially did not disclose that she stayed out at GameWorks after the gender reveal party ended and after she had called off work. ECF Nos. 161 at 141-42; 135-12 at 2; 163 at 210-11.  Wynn's human resources department utilized multiple tiers of approval prior to terminating Ramirez. ECF No. 153 at 215-16.  The investigation concluded that Ramirez used her FMLA leave to socialize and then was dishonest about whether she continued to stay out and socialize after she called off work.

Ramirez argues that the HR employees' failure to contact her doctor directly for clarification shows bad faith.  But the FMLA limits the circumstances an employer may contact a doctor to (1) clarification of handwriting, (2) clarification of the meaning of a response, or (3) authentication. *See* 29 C.F.R. § 825.307(a).  The HR investigator testified that she did not believe she needed clarification of Ramirez's FLMA certification. ECF No. 153 at 187.  Rather, she believed Ramirez had misused her FMLA the night of the party. *Id.* at 216.

17

Based on the testimony and evidence, Wynn has met its burden of showing that it had a good faith belief that Ramirez had taken FMLA leave when it was not medically necessary and therefore had reasonable grounds to believe that it was not violating the FMLA when it terminated her.  Accordingly, I deny Ramirez's motion for liquidated damages.

### 3.  Gross Up

Because awards for back pay are taxable, I have discretion to "'gross up' an award to account for income-tax consequences." *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1116-17 (9th Cir. 2017).  "There may be many cases where a gross up is not appropriate for a variety of reasons, such as the difficulty in determining the proper gross up or the negligibility of the amount at issue." *Id.* at 1117.  Ramirez "bear[s] the burden of showing an income-tax disparity and justifying any adjustment." *Id.*

I decline to award a gross up.  Ramirez has not met her burden of showing an income tax disparity to justify an adjustment.  She argues generally about "the adverse tax consequences that [she] will suffer because of the lump sum payment she will receive." ECF No. 189 at 8-9.  But Ramirez does not show what her current tax liability is and how the backpay award will affect her or whether all or only some of the damages will be taxable.  Finally, I have reduced the damages amount available on remittitur.  Because this smaller amount is likely to have negligible tax consequences, I deny her motion for gross up.

### G.  I award Ramirez attorneys' fees, but less than she requests.

Ramirez moves for attorney fees under the FMLA's fee-shifting provision.  She seeks $777,125 based on 779.72 hours worked by attorney Christian Gabroy at $750 per hour and 349.7 hours worked by attorney Kaine Messer at $550 per hour.  Wynn opposes awarding fees

altogether, but if awarded Wynn argues for various reductions in hours and rates that would result in a fee award of $10,118.85.

When a plaintiff prevails under the FMLA, the court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). When calculating the amount of attorney fees to award, I apply the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). I also consider the *Kerr* factors to determine the reasonableness of a fee:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitation imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557, 566 (1992).

### 1. Hourly Rates

The party seeking fees has the "burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Vargas v. Howell*, 949 F.3d 1188, 1199 (9th Cir. 2020) (quotation omitted). The relevant community is Clark County, Nevada. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). "Affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community are satisfactory evidence of the prevailing market rate." *Id.* (simplified). The opponent then "has a burden of rebuttal that

1  requires submission of evidence challenging the accuracy and reasonableness of the facts

2  asserted by the prevailing party in its submitted affidavits." *Id.* at 1110-11 (simplified).

3       Gabroy submitted an affidavit indicating that he has approximately 21 years of legal

4  experience in civil litigation focusing on personal injury and employment matters. ECF No. 191-

5  2.  Messer submitted an affidavit indicating approximately 10 years of experience focused on

6  labor and employment practice. ECF No. 191-3.  And Joseph P. Garin, an attorney who is

7  familiar with Gabroy and Messer and specializes in attorney fee requests, submitted a declaration

8  that Gabroy and Messer enjoy a good reputation in the legal community and affirming that their

9  fee request was reasonable. ECF No. 191-5.  Ramirez also relies on cases from this district

10 approving similar rates for Gabroy and other attorneys of similar experience to Gabroy and

11 Messer.[7]

12      Wynn suggests hourly rates of $400 for Gabroy and $275 for Messer.  It cites several

13 Nevada cases awarding these or similar rates to attorneys with around 20 and 10 years of

14 experience, respectively.[8]

15

16 ———————————

17 [7] *Tallman v. CPS Sec. (USA), Inc.*, 655 Fed. Appx. 602, 603 (9th Cir. 2016) (affirming award of
   fees where Ramirez claims an experienced attorney requested hourly rate of $720); *Sasiada v.
   Switch, LTD.*, No. 2:23-cv-88 JCM (NJK), 2024 WL 4557360, at *2 (D. Nev. Oct. 23, 2024)

18 (approving rate of $550 per hour for partner with 27 years of experience); *Reno v. W. Cab Co.*,
   No. 2: 18-cv-00840-APG-BNW, 2024 WL 3028258, at *2-3 (D. Nev. June 17, 2024) (approving

19 hourly rates of $510 for employment attorney with more than 30 years of experience and $350
   for attorneys with 9-10 years of experience); W*alden, v. Nevada*, No. 3:14-cv-00320-MMD-

20 CSD, ECF Nos. 433-7, 441 (D. Nev. Mar. 20, 2023) (approving settlement where Gabroy and
   Messer requested hourly rates of $850 and $675, respectively); *Valdez v. Cox Commc'ns of Las

21 Vegas, Inc.*, No. 2:09-cv-01797-PMP-RJJ, ECF Nos. 295 at 3, 351 (D. Nev. Apr. 10, 2012)
   (approving rate of $450 per hour for Gabroy).

22

23 [8] *See e.g.*, *Su v. NAB LLC*, No. 2:21-cv-00984-JCM-EJY, 2024 WL 427485, at *3 (D. Nev. Jan.
   25, 2024) (reviewing prevailing rates over time and concluding that $400-415 per hour is
   appropriate for partners with 15-20 years of experience and $325-390 per hour for an attorney
   with approximately 10 years of experience); *Borenstein v. Animal Found.*, No. 2:19-cv-00985-

1    I have reviewed these cases and, along with my familiarity of the prevailing rates in Clark

2 County, conclude that Gabroy and Messer's requested rates are too high and instead apply the

3 hourly rates of $500 for Gabroy and $350 for Messer.  These rates are in line with typical

4 attorney's fee awards in this community, and each of the cases with higher rates Ramirez cites

5 involved additional context.  For example, in *Walden*, the court approved a portion of a class

6 action settlement to satisfy attorneys' fees rather than finding individual rates to be reasonable.

7 *See Walden, v. Nevada*, No. 3:14-cv-00320-MMD-CSD, ECF No.  441 at 4 (D. Nev. Mar. 20,

8 2023).  And in *Tallman*, the attorneys requested rates of $475 per hour for an experienced

9 attorney and $350 for an associate, which the court reduced to $400 and $240 per hour. *Tallman*

10 *v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249 at 1257-59 (D. Nev. 2014).  Finally, although the

11 court approved a rate of $550 per hour for an experienced partner in *Sasiada*, it noted that the

12 partner delegated the majority of the hours to a less experienced, and less expensive, associate.

13 2024 WL 4557360, at *2 ("The billing record shows that much of the work was delegated to an

14 associate who billed at a lower rate than partners, which the Nevada Supreme Court has found to

15 support a finding that the hourly rate was reasonable.").

16    2.  Hours Worked

17    Wynn objects to many of Ramirez's attorneys' billed hours.  As an initial matter, I

18 decline Wynn's suggestion that I deny Ramirez's motion completely.  Many of Wynn's

19 objections, however, warrant attention and reductions in the total hours allowed.  Ramirez

20 responds to some, but not all, of Wynn's specific objections and argues that if any reduction is

21 necessary, a modest 10-15% haircut is the appropriate remedy.

22

23 ───────────────
CDS-NJK, 2023 WL 8254490, at *3 (D. Nev. Nov. 28, 2023) (finding $400 per hour rate
reasonable for attorney with around 20 years of legal experience).

1    "By and large, [I] should defer to the winning lawyer's professional judgment as to how

2    much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106,

3    1112 (9th Cir. 2008).  However, I may "reduce the amount of requested fees to reflect a party's

4    limited degree of success, to account for block billing, or to deduct those hours [I] deem

5    excessive," so long as I provide an adequate explanation. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d

6    754, 763 (9th Cir. 2015) (citations omitted).  Wynn bears the burden of producing "a sufficiently

7    cogent explanation" for fee reductions beyond a 10% "haircut." *Moreno*, 534 F.3d at 1112, 1115.

8         3. *Kerr* Factors

9              i. *Time and Labor Required*

10    Wynn points out several instances of duplicate billing or billing for tasks that should not

11   be billable.  For example, both Messer and Gabroy billed for preparation and attending each of

12   the depositions taken in this case. *See e.g.*, ECF No. 191-1 at 145-47.  Although Ramirez argues

13   that, as a small firm, Gabroy and Messer take a team-based approach, her attorneys also

14   submitted affidavits touting their experience and skill, which should include taking a deposition

15   unassisted.  Similarly, Wynn points out at least 14 entries for Messer reviewing Gabroy's email

16   correspondence. ECF No. 207 at 21.  This is unnecessarily duplicative work.

17    Both Gabroy and Messer appear to have billed .17 or .20 hours for receiving automated

18   email notices from the court's Electronic Case Filing system. *See e.g.*, ECF No. 191-1 at 12-13.

19   The final entry represented was ECF No. 181, and if each attorney billed for each filing up to

20   that point, these automated email notifications would account for more than 30 hours per

21   attorney.  Wynn also objects to billing entries for administrative tasks such as correspondence

22   with court staff regarding technology checks and transcripts, pointing out approximately seven

23   hours of administrative or clerical tasks. ECF No. 207 at 28.  These clerical tasks are not billable.

1   *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at

2   hourly rates, the court should reduce the hours requested to account for the billing errors.").

3          Wynn further points to time entries for speaking to the media, which Gabroy defends as

4   necessary to defend against attacks by Wynn. ECF No. 191-1 at 24-25.  Although small, this

5   time is not billable because it was not necessary to securing the relief obtained for Ramirez. *See*

6   *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, No. C14-1178 MJP, 2017 WL

7   5976408, at *1 (W.D. Wash. Aug. 30, 2017).

8          Wynn also objects to Gabroy's use of block billing for various tasks.  Although block

9   billing may be acceptable so long as it adequately describes the tasks performed, some of

10  Gabroy's entries lack the necessary detail to evaluate their reasonableness.  For example, his first

11  entry is 25 hours billed for "Drafting Motions: Drafting finalizing, and revisions of attorneys'

12  fees and costs motions over multiple days. . . ." ECF No. 191-1 at 2.  Gabroy also billed 16-18

13  hours each day of trial in single entries with explanations that are sometimes helpful but often

14  difficult to decipher. *Id.* at 39.

15         I do not find Wynn's other objections (such as its claim that the records were not

16  contemporaneous or that Ramirez's motion to compel was frivolous) to warrant additional

17  reductions.  But I will address in the other *Kerr* factors Wynn's arguments about work done

18  before the EEOC and the fact that Ramirez succeeded on only one of her claims.  This case

19  lasted nearly seven years, involved multiple witnesses, and culminated in a five-day jury trial.

20  No matter the subject matter, such a case is going to involve substantial time and effort.

21  Nevertheless, many of the documented tasks are not billable and should be reduced from the

22  total.  This factor favors a reduction.

23  / / / /

*ii. Novelty and Difficulty of the Questions Involved*

Although this case was thoroughly litigated on both sides, the underlying issues were not particularly novel outside the specific facts of the case. Both sides' attorneys specialize in labor and employment law and FMLA cases arise frequently in this court. This factor is neutral.

*iii. Skill Requisite to Perform the Legal Service Properly*

While the case required counsel to navigate all stages of litigation through trial and beyond, such skills are not unique to this case. This factor is neutral.

*iv. Preclusion of Other Employment Due to Acceptance of the Case*

This case lasted for seven years, although it had only a few periods of high demand during discovery and before and during trial. Nevertheless, Ramirez's attorneys took this case on contingency and fronted money and time without compensation over those many years. This factor is neutral or weighs against a reduction.

*v. Customary Fee*

As Ramirez's retained expert noted, employment cases are typically done under a modified contingency agreement, and this case was no exception. The regular rates charged by Ramirez's attorneys are therefore less instructive because they are primarily charged to the opposing party rather than their own clients. This factor is neutral.

*vi. Whether the Fee is Fixed or Contingent*

This case was taken on a modified contingency basis where Ramirez's attorneys would receive the greater of one-third of either the money recovered or any attorney's fee award. Her attorneys therefore took on the risk of failure in the case and had to bear the expense and time commitments for several years. This factor is neutral or weighs against a reduction.

*vii.  Time Limitations Imposed by the Client or the Circumstances*

Ramirez does not identify any limitations imposed by the client or circumstances other than noting that the case continued through the COVID-19 pandemic.  This factor is neutral.

*viii.  Amount Involved and the Results Obtained*

Ramirez sought approximately $6.3 million at trial.  Because she prevailed on only her FMLA claim, however, she was limited in the types of damages she could recover.  And Ramirez succeeded on only one of her five claims that made it to trial.  She voluntarily dismissed her ADA retaliation claim because it was redundant in the relief available, and I granted Wynn's motion for judgment as a matter of law on her negligent training and supervision claims.  The jury found against Ramirez on her ADA discrimination claim.  Her final award, even prior to remittitur, is much less than Ramirez requested at trial because of this limited success.

Wynn's proposed 80% fee reduction, however, is too harsh.  In circumstances where an attorney obtained excellent results based on the hours reasonably expended on the litigation, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.  "Where a plaintiff prevails on some claims and not others in an employment discrimination case," I (1) ask whether the unsuccessful claims were related to the successful claims, and (2) evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (quotations omitted).  "Related claims will involve a common core of facts or will be based on related legal theories." *Id.* (simplified).

Ramirez's unsuccessful claims are largely related to her successful one.  They all relate to her actions on the night of the gender reveal party and Wynn's subsequent investigation and

termination of Ramirez.  The same witnesses, documents, underlying facts, and similar defenses apply to the claims.  Some billing categories, however, can be identified that apply specifically to the unsuccessful claims.  For example, the hours spent preparing for and representing Ramirez before the EEOC are relevant only to Ramirez's unsuccessful ADA claims. ECF No. 191-1 at 213-18.  And major motions practice involved a significant portion of work devoted to the unsuccessful claims. *See* ECF No. 64 at 18-28 (approximately 3.5 pages responding to summary judgment motion for FMLA and approximately 7 pages for unsuccessful claims).

Because the claims are related, I must assess the overall relief obtained in relation to the hours reasonably expended on the litigation.  Although the monetary amount is quite low compared to what was requested at trial, Ramirez did obtain partial success from the jury.  And the number of hours spent naturally swelled considerably before and during trial.  It was in part because Wynn so vigorously defended the case that Ramirez required so many hours to obtain FMLA relief.  Nevertheless, this factor weighs in favor of a reduction because Ramirez was successful on only one of her claims, she received a small fraction of the monetary recovery she sought, and at least some portion of the hours billed can be fairly attributed to her unsuccessful claims.

### ix.  Experience, Reputation, and Ability of the Attorneys

Gabroy and Messer appear to have a good reputation in the legal community as expressed in Garin's supporting affidavit, and Wynn does not dispute this.  This factor is neutral.

### x.  "Undesirability" of the Case

Ramirez's attorneys took on this case on a contingency basis knowing there was a chance of no recovery at all.  Wynn litigated this case for seven years culminating in a five-day jury trial.  This factor is neutral or weighs against reduction.

26

1               *xi.  Nature and Length of the Professional Relationship*

2        Gabroy and Messer have represented Ramirez throughout this case but there is no

3 indication that they have a prior professional relationship.  This factor is neutral.

4                     *xii.  Awards in Similar Cases*

5        Because of the nature of fee-shifting provisions and the limited damages allowed by the

6 FMLA, the relatively small recovery amount compared to the attorney's fee request is not

7 unusual. *See e.g.*, *Atwood v. PCC Structurals, Inc.*, No. 3:14-cv-00021-HZ, 2016 WL 2944757,

8 at *1 (D. Or. Apr. 1, 2016) (awarding $111,790.15 in attorney fees following $5,000 FMLA jury

9 award); *Isom*, 225 F. Supp. 3d at 884, 888, 890-91 (awarding $525,782.75 in attorney fees on

10 FMLA jury award of $114,618 after court granted summary judgment on five of six claims).

11 This factor is neutral or weighs against reduction.

12                4.  Lodestar Calculation

13        Based on the categories of hours identified above that were unreasonably billed and the

14 limited results obtained relative to the hours spent, an adjustment in hours is warranted.  To

15 account for the issues identified above, I will impose a 25% reduction to Gabroy and Messer's

16 total hours.  This brings Gabroy's hours from 779.72 to 584.79 and Messer's from 349.7 to

17 262.275.  At their adjusted rates of $500 per hour for Gabroy and $350 per hour for Messer their

18 resulting fee awards are $292,395 and $91,796.25, respectively, for a total amount of

19 $384,191.25.

20      **H.  I deny Wynn's Bill of Costs and reduce Ramirez's Bill of Costs.**

21        Both parties submitted bills of costs.  In response to Ramirez's objection to Wynn's bill

22 of costs, Wynn clarified that it is requesting that each party bear their own costs because there

23 was a mixed verdict.  Ramirez asserts that she is the prevailing party and entitled to her costs and

1    has no obligation to pay Wynn's costs.  Wynn objects to Ramirez's bill of costs arguing again for

2    each party to bear its costs or to exclude many of Ramirez's costs as not taxable under the Local

3    Rules.  Ramirez does not respond to this objection other than to generally assert that she is

4    entitled to her costs.

5           Unless otherwise provided for, costs should be allowed to the prevailing party. Fed. R.

6    Civ. P. 54(d)(1).  A plaintiff is considered a prevailing party "if they succeed on any significant

7    issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar*

8    *v. Hobby*, 506 U.S. 103, 109 (1992) (quotation omitted).  It is not necessary for Ramirez to

9    prevail on all of her claims to be found the prevailing party. *San Diego Police Officers' Ass'n v.*

10   *San Diego City Emps. Retirement Sys.*, 568 F.3d 725, 741 (9th Cir. 2009).  When there is a

11   mixed judgment, I have discretion to require each party to bear its own costs. *Amarel v. Connell*,

12   102 F.3d 1494, 1523 (9th Cir. 1996).

13          Ramirez is the prevailing party and entitled to costs.  She obtained judgment in her favor

14   on her FMLA claim, which achieved some of the benefits she sought in this suit.  Although she

15   was unsuccessful on her other claims, I am not inclined to have each party bear its costs because

16   Ramirez's unsuccessful claims were related to her successful one.

17          Wynn objects to several specific costs as disallowed under Local Rule 54, which

18   identifies costs that are taxable and excludes others.  Ramirez does not respond to the specific

19   objections or provide additional information for entries that Wynn argues lack required

20   specificity.  I have reviewed the items Wynn objects to and agree that they should be excluded

21   from the bill of costs.[9]  Accordingly, I award Ramirez $9,282.30 in costs.

22

23   [9] Attorney travel expenses are not allowed by LR 54-11(k).  Postage is not allowed under LR 54-11(j).  Unspecified copies are not allowed under LR 54-6(b) because Ramirez does not provide the requisite information to support taxation under LR 54-6(a).  Dr. Cohen's testimony should be

## II.  CONCLUSION

I THEREFORE ORDER that defendant Wynn Las Vegas, LLC's motion for new trial or, alternatively for remittitur **(ECF No. 174) is GRANTED**.  Plaintiff Tiare Ramirez has until August 28, 2025 to elect whether to (1) accept a remittitur of the jury's damages award from $321,200 to $20,477.84 (plus $6,722.91 in prejudgment interest), or (2) opt for a new trial on FMLA damages.

I FURTHER ORDER that defendant Wynn Las Vegas, LLC's motion for sanctions **(ECF No. 175) is DENIED**.

I FURTHER ORDER that defendant Wynn Las Vegas, LLC's renewed motion for judgment as a matter of law **(ECF No. 179) is DENIED**.

I FURTHER ORDER that plaintiff Tiare Ramirez's motion for a new trial **(ECF No. 183) is DENIED**.

I FURTHER ORDER that plaintiff Tiare Ramirez's motion for equitable relief **(ECF No. 188) is DENIED**.

I FURTHER ORDER that plaintiff Tiare Ramirez's motion for liquidated damages, prejudgment interest, and gross up **(ECF No. 189) is GRANTED in part**.  I grant it as to prejudgment interest and deny it as to liquidated damages and gross up.  If Ramirez accepts remittitur, I award her $6,722.91 in prejudgment interest.

---

reduced to the standard witness amount of $40 allowed under 28 U.S.C. § 1821(b) absent further justification.  Ramirez's attorneys' lunches are not taxable, nor are their client development costs such as gift bags.  Ramirez does not provide justification for the fee retainer for the professional services related to attorneys' fees and costs.  To the extent it is for an expert witness report, it is not taxable under LR 54-11(h).

I FURTHER ORDER that plaintiff Tiare Ramirez's motions for attorneys' fees and costs **(ECF Nos. 190, 192) are GRANTED in part**. I award her $384,191.25 in attorneys' fees and $9,282.30 in costs.

I FURTHER ORDER that defendant Wynn Las Vegas, LLC's bill of costs **(ECF No. 171) is DENIED**.

DATED this 29th day of July, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE